PARTMAR CORPORATION ET AL. *v.* PARAMOUNT
PICTURES THEATRES CORP. ET AL.

No. 17.   Argued October 13, 1953.—Decided February 8, 1954.

90

*Russell Hardy* argued the cause for petitioners. With him on the brief were *Henry Schaefer, Jr.* and *James Wallace Kemp.*

*Jackson W. Chance* argued the cause for respondents. With him on the brief was *Rodney K. Potter.*

MR. JUSTICE REED delivered the opinion of the Court.

This case presents a matter of federal practice involving inconsistent positions by litigants in court proceedings. We have often held that under the doctrine of *res judicata* a judgment entered in an action conclusively

settles that action as to all matters that were or might have been litigated or adjudged therein.[1] But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."[2] This latter aspect of res judicata is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation.

Petitioners entered counterclaims in a suit against them by respondent. These counterclaims were dismissed by the trial court upon determination of the original suit for petitioners and against respondents. The cause of action stated in petitioners' counterclaims is based upon a controverted personal right that had not been adjudged and therefore res judicata is no bar to the claimed right of recovery. Respondent, however, in its original suit had raised an issue, determinative of its cause of action, which had been therein successfully controverted by petitioners to final judgment on the merits. Collateral estoppel stands as a bar to further litigation by the parties of this issue, and this issue was held by the trial court to be determinative of petitioners' counterclaims. Petitioners' argument that the dismissal denied a hearing of issues that might have been but were not determined by the judgment on the merits of the original action

---

[1] *Cromwell* v. *County of Sac,* 94 U. S. 351, 352; *Fayerweather* v. *Ritch,* 195 U. S. 276, 300, 308; *Gunter* v. *Atlantic Coast Line R. Co.,* 200 U. S. 273, 290; *Stoll* v. *Gottlieb,* 305 U. S. 165.

[2] *Cromwell* v. *County of Sac, supra,* at 353; *United States* v. *Moser,* 266 U. S. 236, 241; *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66, 74; *Commissioner* v. *Sunnen,* 333 U. S. 591, 597–601. Cf. *Federal Trade Commission* v. *Cement Institute,* 333 U. S. 683, 706, where the rule is recognized but its application denied because the issues differed.

moved us to grant certiorari, limited to the issue of the counterclaims. 345 U. S. 963.

Although federal jurisdiction was sought only on the ground of diversity, the complaint relied upon a breach of the Sherman Act, and the counterclaims were similarly bottomed on that federal law. Therefore our conclusion is reached on a consideration of federal law and procedure. It will depend upon whether or not any issue of fact or law remained for decision after the primary action was decided.[3] The issue reaches us under the following circumstances.

Paramount Pictures Theatres Corp., a subsidiary of Paramount Productions, Inc., and successor to Paramount Pictures, Inc., is a New York corporation engaged in the business of operating motion picture theatres throughout the United States. These three corporations will hereinafter be referred to jointly as "Paramount." On August 31, 1939, Paramount leased the Paramount Downtown Theatre in Los Angeles, California, for ten years to Partmar Corp., a California corporation, petitioner here, wholly owned by Fanchon & Marco, Inc. This lease was subsequently amended in 1942 and extended to March 18, 1952. A "film franchise agreement" was executed in conjunction with, and for the same period as, the lease. It licensed Partmar to exhibit Paramount pictures at the theatre as first "runs" of the films, required Partmar to exhibit such pictures not less than forty-six weeks each year, and set a scale of license fees. The lease expressly provided that it was terminable at the option of Paramount if the franchise agreement "be cancelled or terminated for any reason whatsoever." Other provisions of the lease and agreement are not germane to the issue before this Court.

[3] See Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1; Note, Collateral Estoppel by Judgment, 52 Col. L. Rev. 647.

On December 31, 1946, a decree was entered in the District Court for the Southern District of New York in an equity action brought by the United States against Paramount and other major companies of the motion picture industry alleging a conspiracy to violate the Sherman Act, 26 Stat. 209, 15 U. S. C. §§ 1–2. *United States* v. *Paramount Pictures, Inc.,* 70 F. Supp. 53. One provision of that decree defined a "franchise" to be a licensing agreement "in effect for more than one motion picture season and covering the exhibition of pictures released by one distributor during the entire period of agreement" and enjoined each of the defendants in that action "from further performing any existing franchise to which it is a party and from making any franchises in the future." *Id.,* at 73, Decree, § II, 5.

On March 26, 1947, Paramount notified Partmar that it was cancelling and terminating the franchise agreement because of the injunction, and on April 2, 1947, notified Partmar that it was terminating the lease by reason of the termination of the franchise agreement. Partmar refused to vacate the theatre upon demand, and Paramount instituted this action on May 1, 1947, in the District Court for the Southern District of California, alleging diversity and unlawful detainer of the theatre. The complaint sought, so far as is material here, restitution of possession based on illegality of the franchise under the Sherman Act as construed in the decree in the Southern District of New York, *supra,* and a declaratory judgment that the lease had been properly terminated.

Partmar and Fanchon & Marco, Inc., answered setting up various defenses and filed three counterclaims seeking treble damages under 38 Stat. 731, 15 U. S. C. § 15, resulting from a conspiracy between Paramount and other motion picture companies in violation of the Sherman Act. The conspiracy was alleged to have resulted in the

imposition of excessive terms and conditions on Partmar by the lease and franchise agreement.[4]

By order dated April 26, 1948, the District Court, upon Paramount's motion, ordered Paramount's causes of ac-

[4] Petitioner's first counterclaim alleged:

"27. Paramount Pictures Theatres Corporation, Paramount Pictures, Inc., Paramount Film Distributing Corporation, . . . and the defendants in United States of America v. Paramount Pictures, Inc., et al., Equity No. 87–273, in the United States District Court for the Southern District of New York, and other persons to the defendants unknown, were, at the time of the acts and transactions stated in the complaint herein, and they now are, engaged in a conspiracy in restraint of trade and commerce among the States, in the distribution and exhibition of motion pictures, in violation of the Act of July 2, 1890, that is to say, the same conspiracy stated in the complaint in that case.

.     .     .     .     .

"32. This action has been brought by the plaintiff in pursuance of the aforesaid conspiracy, arrangements and agreements, and to evade and defeat the purpose to end the aforesaid conspiracy and restraint of trade for which United States of America v. Paramount Pictures, Inc., et al., Equity No. 87–273, was instituted.

"33. As part of the aforesaid conspiracy, the plaintiff and the third-party defendants arranged and agreed among themselves, to require Partmar Corporation to license for exhibition at the Paramount Theatre for 46 weeks of each year, only photoplays made and released by Paramount Pictures, Inc., and, for any failure upon the part of Partmar Corporation to obey that requirement, to evict it from Paramount Theatre. The plaintiff, and the third-party defendants have been able to impose, and they have in fact imposed, upon Partmar Corporation, excessive terms, conditions and charges for the photoplays made and released by them and exhibited at the Paramount Theatre, from March 2, 1933, to the present time."

In the second counterclaim, the third-party plaintiffs (petitioners) reiterated their allegations of conspiracy and based their claim for damages on an addition to the lease that required Partmar "to pay an additional sum; that is to say, fifty per cent of the net receipts of Partmar Corporation at the Paramount Theatre."

The other counterclaim is not in the record but the briefs indicate that it contained substantially the same allegation as numbers one and two.

tion for unlawful detainer and declaratory judgment tried separately from Partmar's counterclaims. Prior to trial on May 3, 1948, we handed down our decision on Paramount's and the other defendants' appeals from the decree of the Southern District of New York. *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131. We held *inter alia* that "we cannot say on this record that franchises are illegal *per se* when extended to any theatre or circuit no matter how small" and set aside the District Court's findings relative to such franchises. *Id.,* at 156. Relying on that decision Partmar and Fanchon & Marco, Inc., moved in the Southern District of California for dismissal of Paramount's action against them. Their motion was denied and the case went to trial without amendment of the pleadings in November 1950, on two issues: whether Paramount was justified in terminating the franchise agreement because of the decree in the New York *Paramount* case, *supra;* whether the lease and contract were illegal contracts under the federal antitrust statutes justifying repossession of the theatre by Paramount under California law. See, *e. g., Glos* v. *McBride,* 47 Cal. App. 688, 191 P. 67. Thus issue was joined as to the legality of the actions of Paramount and its alleged co-conspirators relative to the lease and franchise agreement, wholly apart from the New York injunction, and Paramount was in the anomalous position of attempting to prove that its agreements with Partmar violated the antitrust laws. Paramount did not limit its contention of illegality of the agreement to nonconspiratorial aspects of the antitrust laws, but argued that if the agreements were illegal in any way it had the right to possession. That Partmar recognized this position is clearly shown by its statement in its brief to the trial court that "after the reversal of that judgment [in the New York case], the plaintiff [Paramount] took the position that the question presented was whether the franchise was violative of the

Sherman Act, wholly apart from any judgment or the decisions of the District and Supreme Courts." Partmar vigorously contended in brief and in argument that the lease of the theatre and the franchise for "first-run" exhibitions did not in any way violate the Sherman Act. It clearly recognized that one way the franchise might be illegal would be if it were the result of a conspiracy, for it argued in its brief that:

> "There was no allegation or proof of conspiracy. There being no showing of interstate commerce, it is immaterial whether there was conspiracy, unreasonable clearance, fixed admission prices, block booking, or unreasonable restraint. In the absence of interstate commerce, all else was entirely beyond the purview of the Sherman Act. But, assuming that there had been no failure to prove interstate commerce, the absence of conspiracy is equally fatal. Probably the only evidence relative to conspiracy was the statement of Y. Frank Freeman, a witness for Paramount, that there were no conspiratorial arrangements between Paramount and Fox West Coast. . . . Even in a setting of conspiracy, it is doubtful that the franchise would be unlawful. . . . On the evidence in this case the Partmar franchise is neither one of a system, or made by one holding a dominant position, or pursuant to a conspiracy . . . ."

It thus insisted that the remunerative lease and franchise agreements were still valid and subsisting, and that Paramount had no right to possession.

After eighteen days of trial the District Judge on May 2, 1951, filed a memorandum opinion, 97 F. Supp. 552, in which he concluded that the termination "for any reason" clause in the lease meant for any "legal or substantial reason," and that the 1946 decree of the Southern District of New York "was not a legal cause or reason for terminat-

ing the franchise agreement." He continued, "there is no evidence to indicate that any third party conspired with either Paramount or Partmar to bring into existence the franchise agreement," that "a single contract between one film company and one exhibitor is not violative of the Sherman Act," and that, since the franchise agreement was "not in itself an illegal agreement," Paramount "had no right to cancel or terminate it because of illegality." The court went on to hold that "as we find no substantial evidence of a conspiracy in this case on the part of Partmar or Paramount, we are of the opinion that the counterclaimant cannot recover" on the counts seeking treble damages on the basis of an alleged conspiracy. The opinion directed Partmar to submit proposed findings of fact; both parties submitted such findings and proposed conclusions; and a hearing, upon notice, was held on June 18, 1951. Paramount thereupon submitted Finding No. 20 and conclusion No. 11, *infra,* thus formalizing its contention that the judgment denying plaintiff's petition estopped defendant from recovering on its counterclaims for violation of the Sherman Act. At this hearing Partmar appeared and expressly objected to the adoption of the proposed finding and conclusion which required the dismissal of its treble-damage counterclaims. Argument was heard on Partmar's objection, but the court adhered to its position and adopted among its findings No. 20 which provides:

> "Paramount, not in conjunction with any other major studio, entered into the franchise agreement which gave to Partmar the right to exhibit the first-run feature pictures of Paramount in the City of Los Angeles. Neither said franchise agreement, nor said lease, nor any amendment to either of them constituted any part of, nor were they or any of them entered into as a result of any agreement, combina-

tion or conspiracy of any kind whatsoever between Paramount and any other person or persons, nor between Partmar and any other person or persons."

And conclusion No. 11 which provides:

"Inasmuch as the said lease and said franchise agreement and all amendments to each of them were in all respects lawful and were not entered into nor performed as a result of any combination or conspiracy of any kind whatsoever on the part of either plaintiffs, defendants, third party plaintiff or third party defendants, with any person or persons; inasmuch as said lease, said agreement and amendments thereto have neither the purpose or effect of restraining or monopolizing trade or commerce among the several states in the production, distribution, transportation, sale or exhibition of motion pictures; and inasmuch as each was an agreement solely between plaintiff and defendants, or defendants and third party plaintiffs and third party defendants dealing solely with the Paramount Theatre Los Angeles alone and the exhibition of pictures thereat; third party plaintiffs, and each of them, cannot recover upon the first, second and fourth counterclaim, or any of them."[5]

The court simultaneously entered an order giving judgment for Partmar on Paramount's two counts of unlawful detainer, declaring the rights and duties of the parties under the franchise and the lease, and dismissing with prejudice Partmar's three treble-damage counterclaims.

Partmar, apparently not wishing to jeopardize its valuable lease and franchise, took no appeal from parts of

---

[5] Partmar had brought in other parties as third-party defendants under Fed. Rules Civ. Proc. 14. Their presence is not important in this phase of the controversy.

the District Court's judgment declaring the lease and franchise to be valid and subsisting and the theatre not to be unlawfully detained.[6]   Therefore those parts of the judgment must be accepted as valid and binding on the parties.   Partmar did, however, serve timely notice of appeal to the Court of Appeals for the Ninth Circuit from so much of the District Court judgment as dismissed with prejudice the treble-damage counterclaims. The Court of Appeals for the Ninth Circuit, in a *per*

---

[6] While Partmar did not appeal, it might have.   The finding and conclusion of law just quoted were essential to the determination of Paramount's claim for possession of the theatre.   Paramount's position after this Court's reversal of the franchise portion of the New York decree, was that the agreements were invalid under the federal antitrust statutes as the product of an illegal conspiracy.   It is only when a finding of law or fact is not necessary for a decree that the prevailing party may not appeal and the finding does not form the basis for collateral estoppel.   This is shown by the case cited to support the statement as to appeal in *Lindheimer* v. *Illinois Bell Telephone Co.*, 292 U. S. 151, 176.   See *New York Telephone Co.* v. *Maltbie*, 291 U. S. 645, and cases cited.   *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U. S. 241, stated the practice negatively. "A party may not appeal . . . findings . . . not necessary to support the decree."   Professor Scott, note 3, *supra*, at 12, concurs in this view.   Restatement, Judgments, § 68 reads: "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72."   Section 69 (2) ["Where a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is immaterial or moot, the judgment is not conclusive against him in a subsequent action on a different cause of action."] is immaterial because the conspiracy determination was essential for Partmar's defense to Paramount's claim. See *Galloway* v. *General Motors Acceptance Corp.*, 106 F. 2d 466. The paucity of cases in this field is explainable by the infrequent happening of a need of a prevailing party to set aside a determination necessary to a judgment in his favor.

*curiam* opinion on December 16, 1952, 200 F. 2d 561, noted agreement with the opinion of the District Court and affirmed the District Court judgment. As heretofore indicated, our consideration is "limited to the issue of the counterclaims."

Partmar contends that the District Court erred in dismissing its counterclaims with prejudice without a separate trial as to their merits, which the trial court had previously ordered, and that such dismissal deprived it of due process of law. In particular, it argues that it was denied the valuable property right of having admitted in evidence during a trial the judgment in the case of *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131, which, it argues, would provide, under § 5 of the Clayton Act, 38 Stat. 731, 15 U. S. C. § 16, prima facie evidence of the conspiracy on which the counterclaims were based. We think these contentions are without merit. The power remained in the trial court until the entry of his final judgment to set aside, for appropriate reasons, the former order for separate trial of the counterclaims.

Each of Partmar's counterclaims for treble damages was predicated upon allegations that Paramount and its alleged co-conspirators engaged in a conspiracy in restraint of trade and commerce, and that the allegedly "excessive terms, conditions and charges for the photoplays made and released by them" and the exaction of fifty percent of the net receipts, imposed by the lease and franchise agreement, were part of such conspiracy. The District Court found in the principal action, which decision was not appealed and is not before us, that neither the lease nor the franchise was the result "of any agreement, combination or conspiracy of any kind whatsoever." Of course, if this finding were not material to the principal action, the doctrine of collateral estoppel would not apply. But this finding was ob-

viously necessary to the court's judgment that the agreements were not illegal. Partmar had ample opportunity upon trial to present evidence and to contest the conspiracy finding, and argument was heard prior to adoption of the findings. This finding, binding all of the parties, determined the key ingredient of Partmar's counterclaims contrary to its allegations and thus precluded recovery upon such claims. A separate trial on the counterclaims would have been improper procedure, as the judgment entered on the complaint was a final disposition of the determinative issue on the counterclaims—whether or not the terms of the lease were a product of an illegal conspiracy.[7]

The allegations of the counterclaims charge that as a result of "the same conspiracy stated in the complaint" in *United States* v. *Paramount Pictures, Inc.*, 334 U. S. 131, Partmar was damaged in the terms of its lease from Paramount. Yet this very lease was sustained by the judgment in this case on the ground that it was not violative of the Sherman Act. Partmar moved to dismiss the complaint in this case after this Court's decision in the *Paramount Pictures* case on the ground that it "had become moot by the demonstrated nonexistence of the basic fact," *i. e.*, the illegality of the lease. In its brief in the trial court, petitioner stated its position clearly:

"The effect of the opinion seems to be that franchises are not unlawful per se, that is, apart from con-

---

[7] *Southern Pacific R. Co.* v. *United States*, 168 U. S. 1, 48–49:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

spiracy, and that on the record in that case they were not shown to have been parts of the conspiracy.

. . . . .

"The Supreme Court seems at least to have clearly indicated that a franchise with one exhibitor for one theatre, like that with Partmar, was not involved in the case. It said in effect that only franchises with defendants and franchises for theatres in a circuit were involved."

Nor would unlimited admission in evidence of the final decree in *United States* v. *Paramount Pictures, Inc., supra,* have aided Partmar. We had reversed the only finding in that case pertaining to the illegality under the Sherman Act of franchise agreements between exhibitors and producers, and the final consent decree as to Paramount entered on March 4, 1949, contains no findings on such subject. Cf. *United States* v. *Paramount Pictures, Inc.*, 85 F. Supp. 881, 897. Since final judgments or decrees in Government antitrust actions are admissible under § 5 of the Clayton Act as prima facie evidence only of issues actually determined in the prior adjudication,[8] the Government judgments provide no proof of the indispensable element to Partmar's counterclaims, that the lease and

---

[8] *Emich Motors Corp.* v. *General Motors Corp.*, 340 U. S. 558, 568–569:

"We think that Congress intended to confer, subject only to a defendant's enjoyment of its day in court against a new party, as large an advantage as the estoppel doctrine would afford had the Government brought suit.

"The evidentiary use which may be made under § 5 of the prior conviction of respondents is thus to be determined by reference to the general doctrine of estoppel. . . . Accordingly, we think plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based."

See *Theatre Enterprises* v. *Paramount Corp.*, 346 U. S. 537; *Monticello Tobacco Co., Inc.* v. *American Tobacco Co.*, 197 F. 2d 629.

franchise were part of or the result of a conspiracy. From the decree there would have been prima facie evidence of a conspiracy but no evidence that the Partmar lease was a result of that conspiracy so as to overturn the trial court's finding in this very proceeding that no illegality tainted the lease. Partmar, therefore, was not prejudiced by the fact that the District Court did not consider either the judgment or the decree as evidence of the conspiracy alleged in the counterclaims. As we have pointed out, the conclusion of the trial court went beyond the lawfulness of the "franchise," as distinguished from the lease of which it was a part, and held that the lease was not secured by conspiracy. See p. 96, *supra*. This was *res judicata* of that fact, if it be considered a fact, and nonetheless *res judicata* if it is a decision on the law, binding in another cause of action arising from the same controversy or claim.[9]

*Affirmed.*

MR. JUSTICE JACKSON and MR. JUSTICE CLARK took no part in the consideration or decision of this case.

[For dissenting opinion of MR. CHIEF JUSTICE WARREN, joined by MR. JUSTICE BLACK, see p. 104.]

---

[9] *United States* v. *Moser*, 266 U. S. 236, 242:

"The contention of the Government seems to be that the doctrine of *res judicata* does not apply to questions of law; and, in a sense, that is true. It does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact*, *question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law."

*Emich Motors Corp.* v. *General Motors Corp.*, 340 U. S. 558, 569; Cf. *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 230.

MR. CHIEF JUSTICE WARREN, whom MR. JUSTICE BLACK joins, dissenting.

I cannot join in the Court's decision. Relying on the doctrine of collateral estoppel, it affirms the trial judge's dismissal of petitioner's treble-damage counterclaims without a trial. The doctrine, I believe, is inapplicable to the facts of this case.

The Court correctly states the well-settled rule that a prior judgment on a different cause of action is not conclusive as to questions which might have been but were not actually litigated in the original action.[1] The inquiry, therefore, must be whether the conspiracy issue was actually litigated in the eviction suit; if it was not so litigated, the District Court's finding as to the absence of evidence of conspiracy cannot preclude petitioner on its counterclaims. The Court rests its decision on the assumptions (1) that the conspiracy issue was litigated in the eviction suit and (2) that in any event petitioner had a full opportunity to litigate the issue. Neither assumption, it seems to me, is warranted by the facts. To those facts I now turn.

The respondent, Paramount, sought to take advantage of its own violation of the federal antitrust laws by bringing an eviction suit to cancel a valuable lease held by its tenant, the petitioner, on a Los Angeles theatre. The lease provided that it was terminable if, "for any reason whatsoever," petitioner's franchise for the showing of Paramount's pictures should be "cancelled or terminated."

---

[1] *Cromwell* v. *County of Sac,* 94 U. S. 351, 353. See also Restatement, Judgments, § 68; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 2–3, 5–6; Note, Collateral Estoppel, 52 Col. L. Rev. 647, 652–657; Developments in the Law, Res Judicata, 65 Harv. L. Rev. 818, 840–841; Von Moschzisker, Res Judicata, 38 Yale L. J. 299, 311–312; Cleary, Res Judicata Reexamined, 57 Yale L. J. 339, 342–343; Freeman, Judgments (5th ed.), §§ 674–676.

Paramount, in its complaint charging unlawful detainer, did not allege in any respect that the franchise was invalid because part of a conspiracy; rather, the crux of the complaint was that the franchise had been terminated by the District Court decree in the Government antitrust action against Paramount and others. *United States* v. *Paramount Pictures, Inc.,* 66 F. Supp. 323, 70 F. Supp. 53. After the eviction complaint had been filed, the decree in the Government action was reviewed here; the Court sustained the decree as to the existence of a nationwide conspiracy among the defendants, but reversed that portion of the decree which held that franchises were illegal *per se.* 334 U. S. 131, 155–156. Petitioner moved to dismiss, contending that the basis of the eviction complaint had been swept away by this Court's decision. In opposing the motion to dismiss, Paramount made an about-face and urged the illegality of the franchise on other grounds: its minimum price requirements, block booking, and restrictions on runs and clearances. Paramount alleged that these provisions of the franchise agreement, apart from any conspiracy and independent of the decree in the Government action, rendered the agreement an illegal "contract . . . in restraint of trade" under the Sherman Act. This new theory of the case was accepted by the trial court without any change in the pleadings, and the motion was denied.

In its answer, petitioner set up as a defense that Paramount was seeking to evict petitioner in pursuance of the conspiracy enjoined in *United States* v. *Paramount Pictures, Inc., supra,* and that the effect of an eviction would be to drive petitioner out of business and thus enable Paramount to extend an unlawful monopoly over motion picture theatres. On Paramount's motion, the defense was stricken as an improper collateral attack on the right of the lessor to recover possession of the theatre.

The answer also contained petitioner's counterclaims, alleging that Paramount and others named as cross-defendants had engaged in the conspiracy enjoined in *United States* v. *Paramount Pictures, Inc., supra,* and that by reason of this market control Paramount had been able to exact from petitioner monopoly profits in the form of overcharges for theatre and film rentals. Treble damages and injunctive relief were sought. On Paramount's motion to dismiss the counterclaims, they were sustained as valid actions under the antitrust laws.[2]

Both actions—the eviction suit and the counterclaims—were then ready for trial. Paramount moved that the two actions be tried separately. Petitioner consented and the court so ordered, the eviction suit to be tried first.

Throughout the lengthy trial of the eviction suit, the trial judge repeatedly complained of the total absence of any evidence showing that the franchise was part of a conspiracy. His complaint went unheeded. Paramount, which had the burden of proof in the eviction suit, not only failed to introduce such evidence but never even alleged such a conspiracy. Petitioner, on the other hand, never denied the existence of the conspiracy, but argued that the franchise in itself was not invalid.[3] And both

---

[2] 38 Stat. 731, 15 U. S. C. § 15.

[3] The Court's opinion, apparently for the purpose of showing that the conspiracy issue was actually litigated, points to statements in petitioner's trial brief to the effect that Paramount had failed to establish a conspiracy in restraint of interstate commerce. It is difficult to understand how petitioner's argument at the trial that the conspiracy issue was *not* litigated can now be converted into proof that the issue *was* litigated. Petitioner's statements in its brief amounted to nothing more than a wholly justifiable contention that Paramount had failed in its burden of proof in the eviction suit; the statements merely pointed out that the franchise was valid in the absence of evidence of conspiracy and that Paramount had not even alleged a conspiracy—by pleadings, evidence, or oral argument.

times that petitioner sought to inject the conspiracy issue into the case, it was prevented from doing so. As I have already noted, petitioner's answer alleged that the eviction suit was brought in pursuance of the conspiracy; on Paramount's motion, the defense was stricken. Later when Paramount offered into evidence the decree in the Government action for the limited purpose of showing Paramount as being subject to the injunctive features of the decree, petitioner objected on the ground that the decree "should go in as a document in toto—no part of it but the whole thing." In support of the objection, petitioner argued that § 5 of the Clayton Act[4] made the decree prima facie evidence of the conspiracy established in the Government action. Again petitioner was overruled.

At the conclusion of the eviction trial, the court gave judgment for petitioner because of Paramount's failure to show the illegality of the franchise by evidence of conspiracy. As to the counterclaims, the court stated:[5]

> "At the time of trial it was agreed that action on the counter-claims should be postponed until after the trial of the main issue involved, and no evidence was offered by either plaintiff or defendant on the counter-claims."

Nevertheless, the court dismissed the counterclaims without trial on the ground that there was ". . . no substantial evidence of a conspiracy in this case on the part of Partmar or Paramount . . . ."[6] The court thus disposed of both the eviction suit and the counterclaims on the same ground—the absence of any evidence of conspiracy.

---

[4] 38 Stat. 731, 15 U. S. C. § 16.
[5] 97 F. Supp. 552, 561.
[6] *Ibid.*

I submit that on these facts the Court's two assumptions are unwarranted. The issue of conspiracy was not litigated; nor did petitioner have a fair opportunity to litigate the issue. Indeed, whether petitioner had an opportunity to do so is immaterial under the doctrine of collateral estoppel. If the counterclaims had been based on the same cause of action as the eviction suit, such an opportunity might have barred petitioner under the more sweeping doctrine of *res judicata.* But here, where the second suit is based on a different cause of action, a neglected opportunity in the first action to litigate an issue is without legal significance.[7]

Under these circumstances, should the doctrine of collateral estoppel be invoked against petitioner to bar a trial on its counterclaims? I believe not. The doctrine presupposes, and the Constitution requires, that the party who is estopped had his day in court in a prior action and that he then had a fair hearing in which to prove his point but failed. Surely the doctrine was never intended to estop a party who in the prior action was denied such a hearing.

That, as I see it, is precisely the situation here. The eviction suit and counterclaims had been severed for trial purposes. During the trial of the eviction suit, Paramount was the only party with any reason or justification for proving that the franchise was part of a conspiracy. Because of Paramount's failure to present such proof, the court held the lease to be valid, but at the same time gave judgment against petitioner on its counterclaims because of the same shortcoming of Paramount's proof. This Court now affirms. The anomalous result is to penalize petitioner for refusing to help Paramount win the eviction suit.

---

[7] See note 1, *supra.*

I believe that petitioner has been denied its day in court, and that the case should be reversed with instructions to the trial court to hear the counterclaims.[8]

---

[8] There is yet an additional reason for not applying the doctrine of collateral estoppel here. Petitioner, as the successful party in the eviction suit, could not appeal the District Court's finding that there was no evidence of conspiracy. *Lindheimer* v. *Illinois Bell Telephone Co.*, 292 U. S. 151, 176; *New York Telephone Co.* v. *Maltbie*, 291 U. S. 645. The adverse finding was not included in the Court's decree, as in *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U. S. 241. Because of this inability to appeal, the finding cannot bind petitioner in a subsequent action between the parties based upon a different cause of action. See Restatement, Judgments, § 69 (2); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 15–18.

The Court's opinion (footnote 6) concedes that inability to appeal precludes a subsequent application of collateral estoppel, but contends that petitioner could have appealed here because the trial court's finding in the eviction suit (as to the absence of proof of conspiracy) was material to the decree in the eviction suit. The Court's opinion cites no case, in this Court or any other, holding that a successful party can appeal findings which are not inserted as part of the decree. Indeed, the opinion overlooks the very holdings of this Court on which it relies for support. In both *Lindheimer* v. *Illinois Bell Telephone Co.*, *supra*, and *New York Telephone Co.* v. *Maltbie*, *supra*, the findings which the public utility sought to appeal related to the value of its property for rate-making purposes; in each case, the trial court had held that the rates fixed by a state commission were confiscatory *on the basis of those findings*. Yet this Court held that the public utility, as the successful party, could not appeal those findings. Surely in this case the trial judge's finding as to conspiracy was no more "material" than the findings which this Court refused to review in *Lindheimer* and *Maltbie*.