**UNION LEADER CORPORATION**

**v.**

**NEWSPAPERS OF NEW ENGLAND, INC., et al.**

**Civ. A. No. 59-23.**

United States District Court
D. Massachusetts.

June 10, 1963.

See also 218 F.Supp. 490.

Malloy, Myerson & Sullivan, Boston, Mass., for plaintiff.

Frank Goldman, Robert H. Goldman, Lowell, Mass., for defendant.

WYZANSKI, District Judge.

This case comes before the Court, pursuant to Rule 53(e)II of the F.R.Civ.P., on objections to the report of a Master, and upon motions for action with respect thereto.

As is adequately disclosed in the opinions of the Court of Appeals, 1 Cir., 284 F.2d 582, and of this Court, D.C., 180 F. Supp. 125, this litigation began when Union Leader Corporation complained that The Haverhill Gazette Company and others had violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 7 of the Clayton Act, 15 U.S.C. § 18, and, when, as counterclaimant, Haverhill Gazette alleged Union Leader violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. This Court, by its Order of September 17, 1959, pursuant to Rule 42(b) of the F.R.C.P., set for separate trial "all issues that have been or may be raised by the pleadings other than issues of damages."

After trial, this Court entered December 28, 1959, its "partial final decree." With respect to the counterclaim of Haverhill Gazette, the final aspects of the judgment included paragraph 3 which restrained Union Leader from making discriminatory advertising charges, paragraph 4 which restrained Union Leader from paying for certain services as advertising solicitors, and paragraph 5 which restrained Union Leader from performing certain contracts. The interlocutory aspects included paragraph 7, directing Haverhill Gazette to prepare a

schedule of its claimed damages, and reading as follows:

"7. The Haverhill Gazette Company shall prepare as promptly as possible a detailed schedule (with appropriate references to the transcript of this case, the exhibits introduced, those records of its own affairs and of Union Leader Corporation which were examined before trial in this case and other relevant sources) showing the precise damages which it claims it suffered from (a) the Union Leader Corporation's actions in inducing advertisers to boycott The Haverhill Gazette, (b) the illegal employment by Union Leader Corporation of Martin Bendetson, Norris Bendetson, Jerome Fishbein, David M. Gordon, Vincent W. Grad, Irving P. Karelis, Sidney Katz, and Eli Shoreman, and (c) such discriminations in advertising charges as have been practiced by Union Leader Corporation in the operation of The Haverhill Journal. If in the light of the opinion in this case, any other types of damages are recoverable they may also be listed on the schedule. Items of damage not clearly revealed by the schedule shall be regarded as barred in the same manner as claims not made at a pre-trial are frequently barred."

In paragraph 11 of the decree this Court stated that:

"* * * this Court enters final judgments with respect to paragraphs 1, 2, 3, 4, 5, 8, 9, 10, and 11 of this Order, but reserves the damage claims referred to in paragraphs 6 and 7."

Thus this Court in its "partial final decree", sometimes called its "order" of December 28, 1959, explicitly left undetermined all issues of damages.

On appeal, the Court of Appeals affirmed those aspects of this Court's decree which related to the counterclaim. When the case was remanded, this Court, pursuant to Rule 52(b) of the F.R.C.P., appointed Derek Curtis Bok, Esq., as Master to hear "all issues of damages, * * * find the facts, state his conclusions of law, and make any recommendations deemed by him appropriate for judicial action." March 1, 1963 the Master rendered a 72 page report, to which he attached a 9 page appendix. May 14, 1963 the Haverhill Gazette and Union Leader each filed with respect to that report objections and motions. May 22, 1963 this Court held a hearing thereon.

Before commenting on any specific objections, this Court gratefully acknowledges the clarity, comprehensiveness, and detachment with which the Master has treated a case of considerable complexity and no little contentiousness. The Master has meticulously set forth the legal principles he applied, and his estimate of the credibility and weight of the testimony. The report reveals complete familiarity with the details of the testimony, with the governing case law and with earlier rulings in this case.

█ Despite contrary contentions, the Master correctly understood and applied the principles of Bigelow v. R.K.O. Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 and Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777. He did not place upon The Haverhill Gazette Company, the counterclaimant, an inappropriately heavy burden of proof. He merely required the counterclaimant to bear the burden of persuading *him* by a preponderance of the evidence that *he* believed. Sometimes phrases used by the Master showed that he was not easily convinced. Yet these were an expression not of an unduly high standard of proof, nor of an inappropriately high threshold of scepticism, but of a demand for evidence strong enough both to withstand critical analysis and to furnish a probable, not merely a possible, basis for an inference.

█ Nor is there any warrant for criticising the Master because on certain issues of causation he reached findings which do not square with statements made by this Court and by the Court of

Appeals in earlier phases of this litigation. The Master, compared with us, had a far more comprehensive record of all aspects of causation which were of crucial importance in measuring the substantiality of the effect of Union Leader's wrongs upon Haverhill Gazette and the extent of the damages and losses suffered by Haverhill Gazette as a consequence of those wrongs. Thus if he were legally free to reach an independent and fresh appraisal on factual issues of causation and damages, it was proper for the Master so to do, and his independent and fresh examination in no way suggests discourtesy or lack of deference to this Court or the Court of Appeals.

But we are told that the Master was legally constrained by the prior actions of this Court and the Court of Appeals. Reliance is placed on the doctrine of collateral estoppel applied in Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532.

In answering this argument, the starting point is this Court's Order of September 17, 1959 directing a separate trial of all issues except the damage issues. No doubt, pursuant to that order, this Court entered, and the Court of Appeals affirmed, a final judgment with respect to certain aspects of the counterclaim. That judgment determined that Union Leader had committed a breach of duty that it owed to Haverhill Gazette, that this breach of duty had invaded the interests of the Haverhill Gazette, and that this invasion caused Haverhill Gazette to suffer damages. But nothing in the text of the judgment itself determines whether particular conduct of Union Leader had a substantial or indeed an appreciable effect upon Haverhill Gazette, and if so how much damages such conduct caused Haverhill Gazette to suffer.

It is true that in our opinions, the Court of Appeals and this Court referred to matters of causation and damage. These references were, however, only to determine whether there was *some* damage suffered by Haverhill Gazette and *some* causal relation between that damage and Union Leader's breach of duty,

so that it was proper immediately to grant equitable relief, and later to ascertain damages. Expressions of opinion as to the extent of damage and the particular causal relations between Union Leader's conduct and Haverhill Gazette's losses must be regarded as findings only with respect to the issues whether there was evidence enough for injunctive relief and for a future ascertainment of damages. Under the separate trial order of September 17, 1959 no more precise issue of causation or damage could have been put in issue, and by virtue of the express reservation in paragraph 11 of this Court's decree, no more precise issue was finally adjudicated.

To guard against misapprehension, this Court should underline the point that in the foregoing discussion it has recognized that, on account of the final award of injunctive relief, in this case there exists a final judgment which does constitute *res judicata* and is a basis for collateral estoppel (and thus the case is not quite like that put in Comment (a) to Restatement, Judgments § 41, where the principle is recognized that "a judgment to recover an amount of damages to be assessed later * * * is not a final judgment"), but this Court regards the estoppel as limited to the issues whether there was *any* damage to Haverhill Gazette and whether there was *any* causal relation between that damage and a breach of duty by Union Leader.

■█ Ultimately what Haverhill Gazette asks this Court to do is to reject the Master's report, or recommit it, because it is against the evidence, against the weight of the evidence, and clearly erroneous.

Rule 53(e)II of the F.R.C.P. provides that "the court shall accept the master's findings of fact unless clearly erroneous." Aside from an erroneous description of the name of the counterclaimant, (which should have been called The Haverhill Gazette Company, not Newspapers of New England, Inc.), there is no finding of fact unsupported by substantial evidence. Moreover, the Master has not failed to consider the bearing of one fact

490

or set of facts upon other facts. He has not ignored the possibility that what in isolation appears insignificant may or may not have significance against a wider background. His failure to accept the Haverhill Gazette's thesis of interrelationship is due not to his unwillingness to test the hypothesis but to his view that the credible evidence does not support the hypothesis. He may be mistaken, but neither his findings nor his failure to make findings are, in the words of Rule 53(e)II, "clearly erroneous."

This Court adopts the report, except that the counterclaimant be referred to as The Haverhill Gazette Company.