SEATTLE FIRST NATIONAL BANK, as
Executor of the Estate of Laurence
P. Smith, et al., Appellants,

v.

HILLTOP REALTY et al., Appellees.

HILLTOP REALTY et al., Appellants,

v.

SEATTLE FIRST NATIONAL BANK, as
Executor of the Estate of Laurence
P. Smith, et al., Appellees.

No. 21207.

United States Court of Appeals
Ninth Circuit.

Sept. 13, 1967.

Rehearing Denied Nov. 29, 1967.

Richard S. White, Gerald Day, Helsell, Paul, Fetterman, Todd & Hokanson, Seattle, Wash., for appellants and cross-appellees Larry P. Smith, and others.

Albert E. Stephan, Slade Gorton, Herbert S. Little, Little, Gandy, Stephan, Palmer & Slemmons, Seattle, Wash., for appellees and cross-appellants, Hilltop Realty, and others.

Ronald E. McKinstry, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash. James R. Stewart, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for cross-appellee The Austin Co.

Before BROWNING, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

Before us are an appeal and a cross appeal. The appeal is by certain partners, doing business as Larry P. Smith & Company, and their wives (collectively, Smith), from a judgment in which they were found liable on the first count of an amended complaint to Hilltop Realty, Inc. (Hilltop) for $2,920.00 compensatory damages and $40,000.00 punitive damages, to Mildred Winslow Ashcraft and Aileen D. Winslow Powell (the sisters) for $2,920.00 compensatory damages and $35,000 punitive damages, and to Hilltop and the sisters jointly for $75,000.00 attorney's fees. On this appeal, we reverse. The cross appeal is by Hilltop and the sisters from the portions of the judgment that dismissed the second, third and fourth counts of the amended complaint. On the cross appeal, we affirm.

A brief history and analysis of the litigation will serve to point up the questions presented. The action was filed on January 7, 1963. The amended complaint is in four counts. The first charges fraud, the second breach of contract, the third violation of the Ohio anti-trust law (Ohio Rev.Code, ch. 1331), the fourth violation of the Sherman Act (15 U.S.C. §§ 1–2). Jurisdiction, as to the first three counts, rested upon diversity of citizenship (28 U.S.C. § 1332) and, as to the fourth, upon 15 U.S.C. § 15. Jury trial was demanded.

On April 7, 1965, the District Court, on motion for summary judgment, dismissed the anti-trust counts (three and four). Hilltop and the sisters, the plaintiffs, then waived jury trial as to the first and second counts, but not as to the third and fourth. The action went to trial on July 20, 1965, before the court. The trial concluded on August 6, 1965. The record is voluminous; the Clerk's transcript contains 2456 pages of pleadings and other documents, and the reporter's transcript of the trial 2791 pages. Portions of at least 32 depositions were designated to be offered in evidence. The pre-trial order covers 362 pages. There are 371 exhibits, many with sub-exhibits. It must be seldom that so monumental a paper structure has been built upon so thin a foundation as in this case.

The essence of the case is not complex. Hilltop, a real estate firm, was retained by the sisters, owners of 175 acres of land near Cleveland, Ohio, known as "Nutwood," to sell or develop their property, on a commission basis. Hilltop retained Smith, a specialist in the development of shopping centers, to make a study and prepare a report on the potential of Nutwood as such a center, for a fee of $4,500. Smith concluded that Nutwood was not suitable and so advised Hilltop. Smith suggested that it send Hilltop a brief report, at a reduced fee of $2920, and Hilltop agreed. This was done.

Hilltop and the sisters asserted, in the first fraud count, that the report was false, that Nutwood was a good shopping center site, and that Smith knew it and deliberately made a false report. When Smith was retained, Smith had already been hired by the developers of another nearby shopping center, Longwood, to advise and assist. It was

also negotiating to, and later did, acquire that center. It told Hilltop that it was advising on Longwood; it did not reveal that it was negotiating to buy Longwood. Damages are alleged as follows:

"Plaintiff did rely on defendants' unfavorable report and because of such reliance placed a price on the Nutwood property of $3,500.00 per acre for the whole area, whereas, if it had been truthfully and loyally advised by the defendants as to the suitability of Nutwood for a regional shopping center and related business development, a minimum price of $20,000.00 per acre would have been warranted.

(b) In reliance on such fraudulent advice from defendants, plaintiff abandoned plans to develop or sell the Nutwood property for such a regional shopping center development, and sold all of said property for the price of $3,500.00 per acre, and thereby suffered a loss of $2,887,500.00, plus exemplary or punitive damages pursuant to Ohio law where the wrongs were committed."

The second, contract, count alleges the same facts. It adds that Smith, by producing a false report, breached its contract with Hilltop. The identical damages are demanded. The two anti-trust counts also each repeat the allegations of the first count. The third charges that the defendants (Smith plus certain of its corporate affiliates) combined to prevent the development of Nutwood, and did what count one says they did, in violation of the Ohio anti-trust law. Again the same damages are alleged. The fourth adds the Austin Company, former owner of Longwood, as a defendant. Its allegations, in addition to those designed to show interstate commerce, are similar to those of the third count. Again, the same damages are alleged.

In a statement of factual contentions, filed by court order, the plaintiffs restated and amplified their case, as to each count. They make it quite clear that their anti-trust counts, as well as their fraud and contract counts, depend upon the making by Smith of a fraudulently false report. And as to each count the statement concludes with the following paragraph:

"Defendants' wrongful acts were the proximate cause with the foreseeable results of plaintiff's damage in selling Nutwood at $3,500 per acre when its true value was a minimum of $20,000 per acre."

It is clear that the making of a false report by Smith, and a consequent sale of Nutwood at a price less than it was worth, are central to the claim stated in each count. Thus, as to the fourth, Sherman Act, count, it is stated that the purpose of the conspiracy was to preclude the development of shopping centers other than Longwood on the east side of Cleveland, and that Smith therefore pursued and secured the contract to make a report on Nutwood and delivered a false report because "discouragement of Nutwood was a necessary step to Smith's continued success * * * a favorable report on Nutwood would have meant competition" for Longwood.

On these two central issues, the court made the following findings:

"The court has not been persuaded that the conclusions reached in the Nutwood market analysis were wrong. This is not to say that the analysis was free from error, but the plaintiffs relied on the conclusions of the report and not on the details of the analysis in making their decision to sell the property to Ridge Hills. However, assuming arguendo that the report in and of itself would constitute fraud or breach of contract, the court finds that the plaintiffs have failed to establish by the requisite burden of proof that as a result of such fraud or breach of contract the plaintiffs sustained any damage in the sale of the Nutwood Farm property. * * *

"The plaintiffs also contended that but for the lack of a favorable market analysis they would have been able to find a buyer for Nutwood Farm who was willing to pay more than did Ridge

Hills. On the state of the evidence adduced in this case, such contention amounts to no more than speculation or conjecture. Accordingly, the contract cause of action will be dismissed with prejudice."

■ These findings are fully supported by the record; by no stretch of the imagination can they be said to be clearly erroneous. That the conclusions of the report were correct and that the plaintiffs did not suffer the damages they claimed, is shown by the record almost to a moral certainty. Several weeks before the delivery of the Smith report another Cleveland developer, Ridge Hills, had begun negotiations with Hilltop for the purchase of Nutwood. The Smith report was mailed to Hilltop on January 8, 1960. On January 13, 1960, Ridge Hills offered to buy the property at $3,500 per acre. At the time it was assumed that Ridge Hills was interested in the property for a shopping center and even after the Smith report Petti, the president of Hilltop, continued to extol the Nutwood property as highly suitable for a shopping center. In fact, Petti urged that if Ridge Hills should purchase the site, Hilltop should be made the exclusive rental agent for prospective store lessees. There is no evidence that Ridge Hills knew of anything but the favorable aspects of the Smith report. On April 29, 1960, the sale of Nutwood to Ridge Hills was completed. For two years following the sale, Hilltop, through Petti, acted as exclusive agent in promoting Nutwood as a regional shopping center. All of Petti's very extensive efforts were unsuccessful, even though he at no time revealed the negative aspects of the Smith report to anyone, and there is no evidence that anyone else did. The proof of the pudding is in the eating. Here, the actual events following the sale of Nutwood demonstrate both that it was not a good shopping center site and that the Smith report was not the cause of a sale of Nutwood at a low price. It was sold for what it was worth.

■ One might reasonably inquire how it is, in the face of these findings and this record, that the court nevertheless entered the judgment on count one from which the appeal is taken. The court's oral remarks and written decision make the reason clear. The court believed that Smith deliberately concealed from Hilltop the fact that Smith had a proprietary interest in Longwood, leading Hilltop to believe that Smith had no greater interest in Longwood than in Nutwood. However, the court's sense of moral outrage did not lead it to find that the report was materially false, or that the concealment was for the purpose of damaging the plaintiffs (the court thought it was not), or that the plaintiffs were damaged in the manner or in the amount claimed by them. But it did lead the court to try to find some other theory of damage as a means of punishing Smith. It seized on the notion that Smith should be required to pay to both Hilltop and the sisters, separately, $2,920.00, the price that Hilltop paid for the report. Thus the judgment requires that Smith pay double the price received, plus two large amounts of punitive damages, plus equally large amounts of attorney's fees. Yet the court held that there was no breach of contract, and dismissed the breach of contract count. We know of no possible way in which to sustain so remarkable a result. In the face of the findings that the conclusions of the Smith report were not wrong and that no damage was sustained in the sale of Nutwood, the judgment on count one cannot stand.

■ The parties are agreed that Ohio law controls. The elements of a cause of action in fraud or deceit are set out in Lucke v. Robison & Co., Inc., 1937, 56 Ohio App. 242, 244, 10 N.E.2d 283, 284. The Ohio court there said a plaintiff must show: "(1) [t]hat there was a representation as to an existing or past fact, material to the transaction; (2) that such representation was false at the time it was made; (3) that the representation was made in bad faith with knowledge that it was false; (4) that it was made with the intent of misleading plaintiff into relying upon it; (5)

that plaintiff must have relied upon the representations with a right to so rely; and, (6) injury must have resulted as a consequence of such reliance." See also Green Bay Auto Distributors, Inc. v. Willys-Overland Motors, Inc., 1951, N.D. Ohio, 102 F.Supp. 151, 157, aff'd mem., 6 Cir., 202 F.2d 151. It seems clear to us that the findings that we have quoted negate, at the very least, items (2) and (6). And in the light of those findings, we cannot see how Hilltop or the sisters were in any way damaged by the actions of Smith. The report they received was not shown to be materially inaccurate, and the record shows that the report's conclusions have been borne out. No damage in the sale price of Nutwood was demonstrated.

Smith may have been unethical in taking the Hilltop account while negotiating the purchase of a possible competitor. Nevertheless Smith fully performed its contract. In Ohio, there is no cause of action for fraud or deceit in the air; plaintiff must show that the fraud has come to rest, causing him injury. As the Ohio court said in Lake Hiawatha Park Ass'n v. Knox County Agricultural Soc., 1927, 28 Ohio App. 289, 162 N.E. 653, 654: "[F]raud without damage or damage without fraud gives no cause of action, but when these two concur, an action lies." They have not concurred here.

The trial court found damage in Smith's failure to provide a report that could be relied upon, and awarded the price of the report to compensate for that unreliability. But the unreliability was not in the report. Its conclusions were accurate. The unreliability, if any, lay in the fact that, if Hilltop had known of the full extent of Smith's interest in Longwood, it might not have asked and paid for the report, or might have been doubtful as to its validity. In such a case, awarding the price of the report as damages would have been appropriate only, if at all, in an action for rescission of the contract. Hilltop has chosen to stand on the contract and sue for the damages flowing from Smith's claimed

fraudulent performance of it. The action must fail with the failure to prove either that the performance was fraudulent or that it caused such damages.

We are also of the opinion that the failure to prove the alleged fraud or that it caused any damage is dispositive of Hilltop's cross-appeal on the trial court's dismissal of the other counts. The trial court did not dismiss the anti-trust counts for this reason; it dismissed because it was of the opinion that even if damages could have been proved they would stem from the alleged fraud and not from any anti-trust violation. As authority for this conclusion the trial court cited Schatte v. I. A. T. S. E., 9 Cir., 1950, 182 F.2d 158; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 1934, 72 F.2d 885; and Peterson v. Borden Co., 7 Cir., 1931, 50 F.2d 644. See also Conference of Studio Unions v. Loew's, Inc., 9 Cir., 1951, 193 F.2d 51, 54–55. We need not stop to decide whether the trial court was correct in its reasoning. The finding that the report was accurate in its conclusions and that the damages claimed were not suffered is as fatal to the breach of contract and anti-trust counts as it is to the fraud count.

But the plaintiffs argue that they were deprived of their rights to jury trial on the anti-trust counts in that: "All of the Smith partners and Trieger were alleged to have violated the anti-trust laws on substantially the same facts as in the fraud count. * * * A jury could find them guilty of the anti-trust violations, proximately resulting in substantial damages to the Winslow sisters and Hilltop from the sale of their property even though, on the fraud count, the court held that the burden of proof was not sustained." (Page 21 of Hilltop's opening brief as cross-appellants.)

The difficulty with this argument at this stage of the case is that the alleged facts of fraud and damage are the same throughout the four counts of the complaint, and a favorable finding on both would be necessary to recover on either of the anti-trust counts. But plaintiffs voluntarily tried these issues

**314**

to the court on the fraud and contract counts. They lost on both issues and we affirm the findings of the trial court. Therefore, on remand plaintiffs would be estopped to reopen either of these issues by principles of *res judicata* and law of the case. See Partmar Corp. v. Paramount Pictures Theatres Corp., 1954, 347 U.S. 89, 100–101, 74 S.Ct. 414, 98 L.Ed. 532; Arnold v. Arnold, 9 Cir., 1966, 356 F.2d 873; Warren v. Lawler, 9 Cir., 1965, 343 F.2d 351; Clinton v. Joshua Hendy Corp., 9 Cir., 1960, 285 F.2d 848, cert. den. 366 U.S. 932, 81 S.Ct. 1654, 6 L.Ed.2d 391; Morgan v. Inter-Continental Trading Corp., 7 Cir., 1966, 360 F.2d 853.

The judgment on count one (paragraphs 4, 5, 6, 7 and 10 of the judgment) is reversed with directions to enter a judgment for defendants on that count. In all other respects the judgment is affirmed.