(C.D. 3473)

SIMS-WORMS, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 17, 1968)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Harold L. Grossman* and *Mollie Strum*, trial attorneys), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: Certain cotton velveteen fabrics, imported from Japan, form the subject of the protests listed in schedule "A," attached to this decision and made a part hereof, which were consolidated for the purposes of trial. Certain other cases, listed in schedule "B," also attached to this decision and made a part hereof, originally consolidated with the foregoing, were abandoned by plaintiffs either during the course of trial, or in their brief. This merchandise was classified as cotton velveteen and was assessed with duty at the appropriate rates provided for within the provisions of paragraph 909 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 384, T.D. 52857, or the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877.

It is the claim of the plaintiffs that said merchandise is properly dutiable at the rate of 12½ per centum ad valorem, 12 per centum ad valorem, or 11 per centum ad valorem, depending upon the date of entry, pursuant to the provisions of paragraph 907 of said act, or as amended, and as modified by the General Agreement on Tariffs and

Trade, 82 Treas. Dec. 305, T.D. 51802, and/or as supplemented by Presidential Proclamation No. 3191, 92 Treas. Dec. 175, T.D. 54399, for waterproof cloth, wholly or in chief value of cotton.

The pertinent provisions of the Tariff Act of 1930, here involved, read as follows:

Paragraph 909, as modified by T.D. 52739, *supra*—

Pile fabrics (not including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton:
Twill-back velveteens_____ 25¢ per sq. yd., but not less than 22½% nor more than 44% ad val.

Paragraph 909, as modified by T.D. 53865, *supra*—

Pile fabrics (not including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton:
Plain-back velveteens_____ 25% ad val.
Twill-back velveteens_____ 25¢ per sq. yd., but not less than 22½% nor more than 30% ad val.

Paragraph 907, as modified by T.D. 51802, *supra*—

* * * and waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber_____ 12½% ad val.

The rate for waterproof cloth was reduced by T.D. 54399 to 12 or 11 per centum ad valorem, respectively, depending upon the date of entry.

Paragraph 907, as amended by section 2, Public Law 86–795—

In order to insure a correct interpretation of the provision "waterproof cloth" in paragraph 907, Tariff Act of 1930, it is hereby declared that it was and is the true intent and meaning of paragraph 907 to limit the term "waterproof", when applied to cloth, "wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber", to cloths of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrellas, and similar articles. Even when cloth possesses water repelling characteristics, it is not classifiable as waterproof cloth within the meaning of paragraph 907, Tariff Act of 1930, unless it is of a kind generally used in the manufacture of articles of the class specified in the preceding sentence.

The competing provisions invoked by the parties raise the question of whether the imported fabrics are waterproof cloth within the provisions of paragraph 907 of the Tariff Act of 1930, or as amended, and/or as modified, *supra*.

In resolving this question, as is the case in all matters in which the tariff classification of imported merchandise is in controversy, we are met with the proposition that the decision of the collector is presumptively correct and rests upon the implication that he has found all necessary facts to sustain his action. *United States* v. *I. Magnin & Co., Inc.*, 21 CCPA 77, T.D. 46394. Therefore, it must be presumed at the outset that the involved merchandise is not waterproof, and the plaintiffs have the burden of establishing the contrary. It does not follow, however, that the presumption of correctness has evidentiary value or may be weighed against relevant and material proof offered by plaintiffs. If a *prima facie* case substantially meeting all the issues in controversy is presented, the presumption is eliminated and the Government has the burden of going forward with evidence to support the collector's classification. Then, the party whose proof has the greater weight is entitled to prevail. *Morse Bros. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 553, T.D. 41432; *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037; *A. Ponnock & Sons* v. *United States*, 45 Cust. Ct. 347, Abstract 64803.

At the trial of this action, Mr. Bernard Worms, a witness for plaintiffs, testified that he is an importer and exporter of cotton fabrics, specifically velveteens. He stated that he had visited a Japanese manufacturer where he observed an operation which he termed waterproofing. This consisted of submerging the fabric in a liquid bath after it was dyed.

Mr. Worms further stated that when this merchandise was imported, under his direction and control, samples of the fabric were selected, tagged, marked, and stored in a large sample closet; that these were samples from shipments of the merchandise here in controversy, labeled by himself or one of his employees with a tag stating the name of the ship, the year of entry, and the purchase lot. The witness said the purpose of this process was to insure uniform color and quality of the imported fabrics.

Later, according to this witness, these samples were matched to the official entry papers by comparing the data on the tags with the information contained in the entry documents. He acknowledged that, because of tag wear and convenience of trial, the original tags on the samples were removed and replaced with new ones. The witness also testified that, by looking at the quality construction number in the description on the entry papers, he could match the samples as being from the imported merchandise. Other samples, he recalled, had the quality construction number inked on them which he also related to the quality construction description in the entry papers of the goods. The record indicates that the importations in controversy covered shipments over several years, during which many yards of the merchandise were imported and sampled.

The witness admitted that he could not state definitely whether or not he personally sampled and tagged all of the entries, but said all entries were sampled and tagged according to an established practice of his company. These were the samples which were introduced and received in evidence. The witness further testified that the merchandise imported was used in the manufacture of all-weather ladies' coats and men's and boys' jackets which are suitable for use as rainwear or other water repellent articles, having been used and advertised as such by American manufacturers.

Also appearing as a witness on behalf of the plaintiffs was Mr. William Comisaroff, a manufacturer of ladies' outerwear and all-weather coats, specializing in fabrics of velvet and velveteens. This witness testified that, during that period of time in which the plaintiffs imported the subject velveteen, the plaintiffs were his prime source of rain or water repellent velveteen fabrics. He stated that from time to time he tested the material to see if it was water repellent, because otherwise it was useless to him since he only sold waterproof coats.

The plaintiffs introduced the results of the United States Customs chemist reports, which demonstrated that all of the samples of the entries introduced into evidence by the plaintiffs, and not since abandoned, resisted water penetration under the prescribed "cup" test.[1]

It appears to be the position of the plaintiffs that from the foregoing evidence a showing has been made that the subject merchandise consists of water repellent velveteen similar in all material respects to the merchandise involved in the case of *Amity Fabrics, Inc.* v. *United States*, 51 Cust. Ct. 97, C.D. 2416, the record in which case was incorporated into the record in the instant case, and the case of *United States* v. *D. H. Grant & Co. Inc.*, 47 CCPA 20, C.A.D. 723.

The *Grant* case, *supra*, involved an importation of cotton gingham which had been subjected to a waterproofing process and, in its condition as imported, possessed the capacity to resist water penetration under the prescribed "cup" test. It was denied classification as waterproof apparently because it was not the kind of cloth generally used to afford protection against water, as set forth in a ruling of the Bureau of Customs. Both this court and our appellate court repudiated the potential use test and adhered to the view that suitability for use is not controlling where it is shown that a cloth had been designedly rendered impervious to water during the course of manufacture, and

---

[1] A 15 inch square of cloth is placed over a liter beaker, a pocket or cup is formed in the cloth, avoiding folds, if possible, and the periphery of the cloth is fastened by such as rubberbands to the outside of the beaker. Then 0.4 liter of water at room temperature is poured gently into the "cup". If after 24 hours no water appears in the beaker, the fabric is considered to be waterproof. This is the test procedure followed by the Bureau of Customs Laboratories * * *. [*United States* v. *D. H. Grant & Co., Inc.*, 47 CCPA 20, C.A.D. 723.]

possessed the capacity to resist water penetration under the conditions imposed by the cup test, which test the court found to be an adequate and proper method of determining water repellency.

In the *Amity Fabrics* case, *supra*, this court had before it the amendment of paragraph 907 of the Tariff Act of 1930, *supra*, which stated in part that for cotton cloth to be classified as waterproof cloth within the true intent and meaning of said paragraph, it must be a kind generally used in the manufacture of articles designed to afford protection against water to the same extent as raincoats, umbrellas, and similar articles. This court held on the record presented that the merchandise at issue in that instance (velveteen cloth) was "generally used" for waterproof articles and that the velveteens were not subjected to the waterproofing treatment merely to take advantage of the lower duty, since there was a wide and varied use of the cloth for raincoats and parts of raincoats.

The Government in the case at bar does not dispute that the samples examined by the Government chemists passed the test for waterproof cloth and use as prescribed in the aforesaid decisions, but vigorously denies that the plaintiffs have established by the evidence that the samples tested were from the imported merchandise and representative thereof. Accordingly, it is urged by the Government that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification.

Thus, in the final analysis, the resolution of the question of whether or not the plaintiffs have produced sufficient evidence to overcome the presumption of correctness inherent in the collector's classification depends upon whether or not the samples tested were proven to be specimens of the imported merchandise. The defendant maintains there is an insufficiency of evidence of connection and in support of that position and in rebuttal of plaintiffs' proof offered the testimony of Mr. John A. Dresser, customs agent at the port of Los Angeles. It appears therefrom that unquestioned samples of two of the protests originally included in the list of consolidated protests here involved, which were admitted into evidence, had failed the prescribed cup test.

Although the plaintiffs have abandoned these two protests, the defendant argues that the failure of those particular samples which were unequivocally identified with the importations to pass the cup test serves to refute the authenticity of the samples introduced by the plaintiffs which did pass the cup test.

We do not draw this inference. It does not follow that, because some velveteen of one or more importations does not pass the cup test, all velveteen will similarly fail. The evidence tends to show that variations occur in the process of waterproofing fabrics depending particularly upon the length of time the fabric is submerged in

the treatment solution, which causes a greater or lesser degree of resistance to water penetration, and this could account for the difference.

In any event, an abandonment of a cause of action constitutes a withdrawal from determination and, therefore, a removal from consideration of all questions pertaining thereto. *Eurasia Import Co.* v. *United States*, 6 Cust. Ct. 477, Abstract 45015; *Berkery, Inc.*, and *Daniel F. Young, Inc.* v. *United States*, 53 Cust. Ct. 196, C.D. 2495.

Accordingly, the question remains, whether or not the plaintiffs presented facts which are not disputed and which preponderate in their favor. The testimony of Mr. Worms explaining the sampling process, the purpose of selecting the samples, and the control exercised over the samples was not refuted, contradicted, or rebutted. All of the proof in the record tends to establish *prima facie* that the samples received in evidence were actually taken from the importations in issue, and the burden of going forward with evidence either to contradict the record as made by plaintiffs or to support the collector's classification independently shifted to the defendant. Its only effort in this direction was the abortive attempt to challenge the authenticity of the samples hereinabove mentioned. As the relationship of the samples to the importations *prima facie* shown to be representative thereof by plaintiffs' proof has not been negatived in this case, and the samples have met the "cup" test for resistance to water penetration, and it appearing that the merchandise is used for waterproofing purposes, the contention of the plaintiffs that the velveteen in issue is waterproof cloth within the purview of paragraph 907 of the Tariff Act of 1930, or as amended, and/or as modified, *supra*, which is dutiable depending upon the date of entry at the rate of 12½ per centum, 12 per centum, or 11 per centum ad valorem, has been substantiated. The claim in the protests to that effect is sustained. All cases enumerated in schedule "B" are dismissed. All other claims are, however, overruled.

Judgment will be entered accordingly.