(C.D. 3957)

AMITY MILLS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 26, 1970)

*Max N. Berry* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in these two consolidated protests consists of cotton velveteen, which was classified as such and assessed with duty at the rate of 30 per centum ad valorem, or 25 cents per square yard, pursuant to the provisions of paragraph 909 of the Tariff Act of 1930, as modified by prevailing trade agreement. It is the contention of plaintiff herein that this fabric should be assessed with duty at the rate of 12½ per centum ad valorem, as waterproof cloth, wholly or in chief value of cotton, as provided in paragraph 907 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802. A claim for classification under paragraph 909 of said tariff act, as modified, at 22½ per centum ad valorem, was abandoned at the trial and will be dismissed.

The relevant tariff provisions read as follows:

Paragraph 909, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739—

909　　Pile fabrics (not including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton:

　　　　Twill-back velveteens_____ 25¢ per sq. yd., but not less than 22½% nor more than 44% ad val.

Paragraph 909, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865—

909　　Pile fabrics (not including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton:

　　　　Plain-back velveteens_____ 25% ad val.

| | |
|---|---|
| Twill-back velveteens_____ | 25¢ per sq. yd. but not less than 22½% nor more than 30% ad val. |

Paragraph 907, as modified by T.D. 51802, *supra*—

| | | |
|---|---|---|
| 907 | * * * and waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber _____ | 12½% ad val. |

For convenience of reference we set forth here, the language of a Treasury ruling published October 12, 1954, 89 Treas. Dec. 291, T.D. 53630:

> (1) *Waterproof cloth*—Cloths of a kind which are not generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrella fabrics, and similar articles, even when such cloths possess water repelling characteristics, are not classifiable as waterproof cloth within the meaning of paragraph 907, Tariff Act of 1930. Insofar as this decision results in the assessment of duty at a rate of duty higher than that which has heretofore been assessed under a uniform practice, it shall be applied only to merchandise entered, or withdrawn from warehouse, for consumption after 90 days from the date of publication of this abstract. Bureau letter to the collector of customs, New York, New York, October 11, 1954.

At the trial of this case plaintiff adduced the oral testimony of its vice-president Bernard Richter, and the deposition upon written interrogatories of Gianfranco Jucker, general manager of the manufacturer and exporter of the merchandise at bar. No evidence was introduced by the defendant.

According to the witness, Richter, plaintiff is engaged in the business of importing textiles, principally velveteens. Its primary source of supply is the Italian firm of Cotonificio Cantoni, which has been selling velveteens exclusively to plaintiff for about 15 years. Mr. Richter who has been affiliated with plaintiff for the past 22 years has been in charge of purchasing, styling and selling its fabrics, as well as clearing its importations through customs. He characterized the merchandise at bar as velveteen, made wholly of cotton, sold and purchased as "seconds," that is to say, of inferior quality, or obsolete shades, or assorted lengths, or close-outs, but not inferior as regards waterproofing. This witness has had occasion to visit the manufacturer's mill in Italy and to observe the techniques used there for waterproofing velveteen. Essentially the process involves the use of a silicon

resin identified as a product called Ramasit K.G.T. in the dye bath. Material which has been so treated and imported by plaintiff has in the past been tested to determine the extent of its water-repellency and its capacity to sustain dry cleaning, and all other Amity imports of waterproof velveteen from Cantoni, save the subject merchandise, have been assessed with duty as waterproof cloth.

However, Mr. Richter did not have any personal knowledge that the velveteen here in issue had been treated with Ramasit K.G.T. He relied solely upon representations from the mill. After importation the subject fabric was not tested for water-repellency, and no sample was available for testing. The company's water-repellent fabric is offered for sale to manufacturers of garments "that require a water-repellent finish, such as outerwear and something like that."

The witness Jucker testified that he has been associated with Cotonificio Cantoni for 27 years as technical manager, and later as general manager. He has supervised the production and exportation of his company's textile products, including velveteens which are manufactured in its plant at Legnano, Italy, and have been so produced for upwards of 50 years. In the course of manufacture of some velveteens, a water-repellent agent is added. The treatment consists of "a bath of the material in a German chemical product (Ramasit K.G.T.)."

Mr. Jucker had personally supervised the books and records of his company since 1937. He was familiar with the velveteens shipped to plaintiff under commercial invoice No. 1986/87/88 of July 31, 1956 and No. 2937 of July 11, 1955. Predicated upon original personal knowledge, supplemented by reference to office files to refresh his recollection, he stated that only part of the velveteens covered by the specified invoices was treated with a water-repellent agency. Checking the invoices with the book of manufacture he was able to determine which was which, and indicated by the letters "WR" on copies of the invoices which items had been treated. The only water-repellent solution which is used by his company in the treatment of velveteens is Ramasit K.G.T.

In view of the conclusion the court is constrained to reach in the instant case, it is not disposed to dwell upon the objections raised at the trial by counsel for the government with respect to the competency of the testimony of plaintiff's witness Jucker, particularly with reference to the location of the factory where the subject fabric was produced, and the deponent's knowledge of which items had been treated with a waterproofing solution. Rather we address ourselves to consideration of the primary question to be resolved of whether the subject merchandise is waterproof cloth within the purview of paragraph 907 of the Tariff Act of 1930, as modified.

A provision for waterproof cloth has been included in the several tariff statutes enacted into law between 1897 and 1930. By judicial construction the term has been developed as embracing cloth which has been designedly rendered impervious to water during manufacture and which at the time of importation possesses the capacity to resist water penetration to the extent required to pass a cup test.[1] *United States* v. *D. H. Grant & Co., Inc.,* 47 CCPA 20, C.A.D. 723 (1959), and cases cited therein.

Under later legislation not here applicable the standards of T.D. 53630 *supra* became statutory. (Public Law 86–795, effective September 15, 1960.)

It is axiomatic that the action of a customs official in classifying imported merchandise for customs duty purposes is presumptively correct, and is predicated upon the existence of all facts necessary to support his decision. When as here a protest is filed against that action, the burden rests with the protestant to establish not only that the classification was wrong, but also that the claimed classification is correct.

As applied to the instant case the foregoing principles require us to assume *ab initio* that the merchandise at bar is velveteen cloth which is not waterproof cloth, and it was incumbent upon the plaintiff to show that this fabric in fact met the requirements for classification as waterproof cloth, as hereinabove specified.

It is not disputed that the instant record lacks evidence of the capacity of this fabric to resist water penetration as revealed by any accredited test made after importation. Nor was any sample of the cloth available for testing. Plaintiff reasons from the fact of the use of a water-repellent solution at the mill to the offer for sale to manufacturers of articles which require a water-repellent finish, that the cloth in issue is waterproof cloth, especially since all other velveteen similarly treated by the same mill was ultimately classified as waterproof cloth.

It is also urged that since at the time of importation a Treasury Department ruling (T.D. 53630) *supra*, later held to be invalid in the *Grant* case *supra*, established use in articles designed to afford protection against water rather than the *per se* possession of water-repelling characteristics as the standard for classification as waterproof cloth, the question of whether or not this fabric passed the cup test

---

[1] This test has been described as follows:

"A 15 inch square of cloth is placed over a liter beaker, a pocket or cup is formed in the cloth, avoiding folds if possible, and the periphery of the cloth is fastened by such as rubberbands to the outside of the beaker. Then 0.4 liter of water at room temperature is poured gently into the 'cup.' If after 24 hours no water appears in the beaker, the fabric is considered to be waterproof. * * *" *United States* v. *D. H. Grant & Co., Inc., supra.*

was not an element in its classification. It is further suggested that the existence of the regulation with its emphasis upon use operated to deter plaintiff from retaining samples for testing.

While we are sympathetic to the position in which plaintiff finds itself as the result of a ruling later held erroneous, we are nevertheless confronted with a record which is lacking in the essential elements of proof to afford relief. It does not appear from any facts elicited at the trial that this fabric possessed the capacity to withstand water penetration for the length of time considered necessary to render it substantially impervious to water for tariff purposes.

And, whereas the Treasury ruling discounted the mere possession of water-repellent characteristics as the significant qualification for designating a fabric as waterproof cloth, it did not eliminate the necessity of establishing those characteristics in the first instance.

Even under the theory advanced by plaintiff the record is found wanting. There is no proof that the subject fabric was used in articles designed to afford protection against water, or was of a kind generally so used. The testimony indicates only that velveteen invoiced as water-repellent "is *offered* to those people that make garments that require a water-repellent finish, such as outerwear and something like that." [Italics supplied.]

Lastly we deem it pertinent to observe that although some velveteen treated with a waterproofing solution satisfies the requirements of a cup test, it does not follow that all velveteen so treated will do so. See and compare *Sims-Worms, Inc., et al.* v. *United States*, 60 Cust. Ct. 609, C.D. 3473 (1968).

In the absence of evidence that the fabric at bar in its condition as imported was capable of resisting water penetration for a twenty-four hour period, we cannot hold it to be waterproof cloth within the intendment of paragraph 907 of the Tariff Act of 1930, as modified, *supra.*

The claim for classification under paragraph 909, as modified, at 22½ per centum ad valorem is dismissed and all other claims are overruled.

Judgment will be entered accordingly.