(C. D. 1009)

WESTERGAARD, BERG-JOHNSEN Co. (CHAS. H. TIMM Co., INC.)
*v.* UNITED STATES

United States Customs Court, First Division

(Decided June 19, 1946)

*Strauss & Hedges* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*John J. McDermott*, special attorney),
for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge:   We introduce this opinion with the following statement of facts, stipulated at the trial between counsel for the respective parties:

That the merchandise is stockfish reliquidated at 2½ cents per pound under Paragraph 717 (c) of the Tariff Act of 1930, under the principle of the decision in the case of B. R. Anderson & Company v. United States, C. D. 740, decided February 25, 1943.

(1)

That such merchandise had previously been the subject of a decision on May 19, 1932, in the case of A. Magnano v. United States, T. D. 45672, and therein held dutiable at 1¼ cents per pound, under said Paragraph 717 (c).

That from May 19, 1932, when the Magnano case was decided, until the time when the entry in the Anderson case was liquidated by the Collector of Customs, at Seattle, on December 19, 1940, the established and uniform practice at all ports was to classify stockfish of the kind here involved, at 1¼ cents per pound under Paragraph 717 (c), upon the authority of the Magnano decision.

That with the exception of Seattle, such practice was followed at all ports, until the Anderson case was decided.

That the merchandise in the present case is stockfish such as was involved in the Magnano and Anderson cases.

A review of the cited cases will clarify the condition giving rise to the instant protest. In both cases the assessment was made at 2½ cents per pound and the importer claimed 1¼ cents per pound under paragraph 717 (c) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 717 (c)), reading as follows:

Fish, dried and unsalted: Cod, haddock, hake, pollack, and cusk, 2½ cents per pound; other fish, 1¼ cents per pound.

In each instance, the case turned on the question of commercial designation.

*Magnano v. United States*, 61 Treas. Dec. 1019, T. D. 45672, held in favor of the importer. In that case the court found that plaintiff's showing, that dried and unsalted codfish was known, when bought and sold, as stockfish, was sufficient to establish a case on commercial designation, and therefore excluded such merchandise from classification under the provision carrying the higher rate of duty in said paragraph 717 (c).

In reversing this decision in *Anderson & Co. v. United States*, 10 Cust. Ct. 148, C. D. 740, we said:

Plaintiff has not established a case on commercial designation under the principles enunciated in the cited authorities. No attempt was made to show a commercial meaning different from the common meaning of the statutory provision for "Fish, dried and unsalted: Cod," under which the merchandise in question was classified. The proof offered by plaintiff was directed toward establishing that this fish is commercially known as stockfish—a term not used in the statute. Such fact, however, does not affect the tariff classification of merchandise, where, as in the present case, the imported commodity falls within the common meaning of the tariff provision under which it was classified. (*United States v. Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092).

This finding clearly differentiates the present attitude of the court regarding imported stockfish from the decision rendered in the *Magnano* case, *supra*. In that case, the court did not apply, as should have been done, the principles here enunciated about which there can be no dispute.

Plaintiff contends herein that the lower rate specified in paragraph 717 (c), *supra*, should apply because there had been an established uniform practice, following the *Magnano* case, *supra*, of classifying stockfish at the rate of 1¼ cents per pound, and that the higher rate

of 2½ cents per pound could not attach until the importer had received 30 days' notice of the change in practice raising thereby a new issue. Such contention is based on the provision in section 315 of the Tariff Act of 1930, as amended by section 6 of the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1315), stating that:

* * * No *administrative ruling* resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties. [Italics added.]

It is important to note that the quoted provision is limited to an "administrative ruling," changing an established and uniform practice, because the imposition of a higher rate of duty on the instant merchandise was not the result of such a procedure. Here, the higher assessment was applied pursuant to a judicial decision, i. e., the *Anderson* case, *supra*, based upon application of legal principles invoking a statutory construction different from what had previously prevailed. Such circumstances do not form a basis for applying the provisions of amended section 315, *supra*. That judicial construction, changing tariff classification of merchandise, is not contemplated by said amended section 315, is clearly disclosed in the following excerpt from the hearings on H. R. 6738 (ultimately enacted as the Customs Administrative Act of 1938) before the Ways and Means Committee of the House of Representatives (75th Cong., 1st sess.):

The last sentence of the proposed amendment [referring to the provision hereinabove quoted] is a paraphrase of the present customs regulations which grant 30 days notice to importers and others before adverse administrative rulings resulting in a change in a uniform and well-established practice become effective. The fairness of such regulations is evident and the statutory crystallization of the policy contained in the regulations and followed by the Treasury Department for 30 years is considered to be very desirable, particularly since a corresponding reciprocal provision has been incorporated in several of the trade agreements entered into under the authority of section 350 of the Tariff Act of 1930, as amended (U. S. C., 1934 ed. title 19, sec. 1351). *This provision would not, of course, apply in the event of a change in practice made necessary by a judicial decision* or by a proclamation made by the President under any provision of law. Any change made under the anti-dumping law (U. S. C., 1934 ed., title 19, secs. 160–173) is expressly excepted from the benefit of this period of grace. [Italics added.]

The intent of Congress as drawn herefrom is clear. We would be greatly surprised to have found any other attitude or expression by Congress. The law as finally enacted very definitely removes judicial decisions from the requirements of section 315, as amended, *supra*.

*Emil Deinert* v. *United States*, 9 Cust. Ct. 411, Abstract 47544, cited in plaintiff's brief, is distinguishable. There, it was established of

record that an administrative ruling of 5 years' standing, issued by the Customs Information Exchange at New York, had been practiced. No such or similar condition existed with reference to stockfish. On the contrary, judicial decisions, as hereinabove outlined, controlled the changes in assessments of duty under said paragraph 717 (c).

The protest is overruled and judgment will be rendered accordingly.