**ASIATIC PETROLEUM CORP.**

v.

**UNITED STATES.**

**C.D. 3958; Protest 65/12934–12556–65.**

United States Customs Court,
Third Division.
Jan. 28, 1970.

Sharretts, Paley, Carter & Blauvelt, New York City (Gail T. Cumins, New York City, of counsel); Joseph F. Donohue, associate counsel, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Andrew P. Vance and Sheila N. Ziff, New York City, trial attorneys), for defendant.

Before RICHARDSON, LANDIS, and RAO, Judges:

LANDIS, Judge.

The question in this case is whether the customs reliquidation of an entry of 200 drums of Shell Alexia Oil A, exported from Holland and entered at New York on October 26, 1960, is void for failure to give the notice required under section 315(d), Tariff Act of 1930, as amended.

The protest addresses itself to the following facts stipulated by the parties. On March 12, 1965, customs liquidated the 200 drums of Shell Alexia Oil free of duty under paragraph 1733 of the Tariff Act of 1930, as a distillate of petroleum. On April 16, 1965, customs reconsidered the liquidation as a distillate of petroleum and reliquidated the 200 drums of Shell Alexia Oil as a nonenumerated manufactured article, dutiable at 10 per centum ad valorem, under paragraph 1558, as modified. Plaintiff protests that:

> The assessment of duty at 10% ad valorem under paragraph 1558 resulted from an administrative ruling that imposed a higher rate of duty than the Secretary of the Treasury found to have been applicable to imported merchandise under an established and uniform practice in effect at the time of these importations. No notice of said ruling was given as required by 19 U.S.C. Sec. 1315(d). The assessment was therefore void.

Section 315(d) of the Tariff Act of 1930, as amended, provides as follows:

> No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of anti-dumping duties.

Plaintiff's protest, as it well recognizes, can be sustained only if, at the time of importation on October 26, 1960, there was in fact an established and uniform customs practice of liquidating Shell Alexia Oil free of duty under paragraph 1733. To this end, plaintiff relies on a letter from the Acting Commissioner of Customs to the Collector of Customs at New York, dated February 5, 1965 (stipulated exhibit 7) which reads as follows:

> Honorable Joseph P. Kelly
> Collector of Customs
> New York, New York 10004
>
> Dear Mr. Kelly:
>
> Reference is made to Asiatic Petroleum Corp. v. United States, 43 Cust.Ct. Rept. 252 CD 2137 (December 4, 1959), holding certain "Shell Alexia Oil A" to be properly free of duty under the provisions of paragraph 1733, Tariff Act of 1930.
>
> The Bureau has given extensive consideration to the tariff treatment to

be accorded unliquidated entries, made before August 31, 1963, which cover merchandise of the type which was the subject of CD 2137.

In view of the existence of an established and uniform practice and no court decision requiring a different result, it is our conclusion that these entries should be liquidated classifying the merchandise as distillates obtained from petroleum, free of duty under paragraph 1733, in accordance with the court's decision.

This letter is being circulated to all customs officers.

Sincerely yours,
/s/ Lester D. Johnson
LESTER D. JOHNSON
Acting Commissioner of Customs

Upon reconsidering the classification of Shell Alexia Oil A, the Acting Commissioner, on April 2, 1965, teletyped new instructions to the Collector at New York as follows (stipulated exhibit 8):

Collector of Customs
New York, New York

Re my letter February 5, 1965 (TC344.3 B), (C.I.E. 265/65) about "Shell Alexia Oil A." The Bureau has reconsidered the matter and has decided there is a court decision requiring the entries to which that ruling was applicable to be liquidated (or reliquidated) dutiable. Accordingly, the instructions in that letter are hereby rescinded. Proceed immediately to liquidate (or reliquidate) entries of "Shell Alexia Oil A," which were subject to the ruling of February 5, 1965 (TC344.3 B), under paragraph 1558, Tariff Act of 1930, at 10 percent ad valorem, plus 2 cents per gallon, section 4521, Internal Revenue Code. A copy of this decision is being sent to all collectors of customs to insure uniform treatment.

/s/ Lester D. Johnson
LESTER D. JOHNSON
cc: All Collectors of Customs

■ The above facts constitute what might be called the fat in plaintiff's case. When we consider the lean that goes with it, there is some form but no stuff to plaintiff's case. Take away the letter of February 5, 1965 (exhibit 7), which is all that gives plaintiff's case any form, and, in our opinion, there would be no case. Naumes Forwarding Service v. United States, 42 CCPA 110, C.A.D. 581 (1955); Washington Handle Co. v. United States, 34 CCPA 80, C.A. D. 346 (1946). The absence of any substance to plaintiff's case is apparent from the uncertainty which surrounded the classification of Shell Alexia Oil on the date of the protested importation, and the stipulated litigation and events which preceded the aforementioned letter from the Commissioner of Customs. We find that there was in fact no established and uniform practice classifying Shell Alexia Oil free of duty under paragraph 1733 and overrule the protest.

To appreciate the tone of uncertainty which surrounded the classification of the Shell Alexia Oil in this case, one must go back to the case which tested that issue, Asiatic Petroleum Corp. and E. F. Philbin v. United States, 183 F. Supp. 275, 43 Cust.Ct. 252, C.D. 2137, decided December 4, 1959. In that test case, upon trial of the issue as to the proper classification of the merchandise in this case, namely, Shell Alexia Oil, this Division of the court held that, on the evidence of record, Shell Alexia Oil was properly free of duty as a distillate of petroleum under paragraph 1733 of the Tariff Act of 1930, rather than as a nonenumerated manufactured article under paragraph 1558, dutiable at the modified rate of 10 per centum ad valorem, as classified by customs. Defendant appealed that decision. The appeal was subsequently dismissed on defendant's own motion, United States v. Asiatic Petroleum Corp. and E. F. Philbin, 47 CCPA 173 (May 1960). On June 23, 1960, this court conformed its final judgment with the mandate of the dismissed appeal, namely that Shell Alexia Oil was properly free of duty under paragraph 1733. We shall discuss, *infra*, plaintiff's second test case (protest

60/12406), involving the same classification issue, which it abandoned September 11, 1961, after trial.

At the time final judgment entered in the first *Asiatic* test case, *supra,* there were, in this court, numerous contemporary protests, against the customs liquidation of Shell Alexia Oil under paragraph 1558, suspended pending decision in the test case, pursuant to this court's rule 16(a). Exhibit 2 of the stipulated facts indicates that, in some instances, customs also, on its own initiative, withheld liquidating entries of Shell Alexia Oil pending outcome of the test case. It is long established that *res judicata* does not apply in cases involving classification of imported merchandise. United States v. Stone & Downer Company et al., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927); United States v. Boone, 188 F.2d 808, 38 CCPA 89, C.A.D. 445 (1951). It follows, therefore, that the decision and judgment in the first *Asiatic* test case, *supra,* was not *res judicata* of the suspended protests in this court involving Shell Alexia Oil, and could not control customs classification of Shell Alexia Oil entries still in customs possession for liquidation. Thus, the customs practice of classifying Shell Alexia Oil dutiable under paragraph 1558 did not necessarily have to change because of the first *Asiatic* test case, assuming customs did not see fit to follow it. William Adams, Inc. v. United States, 56 Cust.Ct. 429, 440, C.D. 2670 (1966) (concurring opinion). Nor would it be correct to say that an administrative decision to classify merchandise in accordance with a court decision not otherwise affecting such merchandise is an administrative ruling requiring notice under section 315(d). Westergaard, Berg-Johnsen Co. (Chas. H. Timm Co., Inc.) v. United States, 17 Cust.Ct. 1, C.D. 1009 (1946).

The Shell Alexia Oil in this protest, imported for consumption at New York on October 26, 1960, is one of the entries which customs withheld liquidating until it decided whether to follow the decision in the first *Asiatic* test case, *supra.* The only period significant in determining whether there was in fact an established and uniform practice of classifying Shell Alexia Oil free of duty under paragraph 1733, *effective at the time of importation as plaintiff's protest claims,* is, therefore, the period prior to October 26, 1960. Biddle Sawyer Corp. v. United States, 50 CCPA 85, 92, C.A.D. 826 (1963). Quite plainly, the customs classification practice prior to June 23, 1960 was to classify Shell Alexia Oil under paragraph 1558.

To ascertain what cases were pending before customs we observe that on June 23, 1960, the date final judgment entered in the first *Asiatic* case, *supra,* customs had in its possession, at various ports, at least 51 entries of Shell Alexia Oil for liquidation or reliquidation: Baltimore 2; Houston 4; Los Angeles 3; Mobile 1; New York 27; Norfolk 2; Philadelphia 8; San Francisco 3; and Seattle 1. Subsequent to June 23, 1960 and up to October 26, 1960, three of the above ports went ahead and liquidated or reliquidated six of those entries free of duty under paragraph 1733: New York reliquidated two; Norfolk liquidated one, and San Francisco liquidated two entries and reliquidated one entry. (Stipulated exhibit 2.) If we read Naumes Forwarding Service v. United States, *supra,* and Washington Handle Co. v. United States, *supra,* correctly it is difficult to see how six somewhat isolated entry liquidations and reliquidations, in a four-month period following decision in a test case, out of a total of at least 51 entries in customs possession for liquidation or reliquidation, would constitute an established and uniform practice where there was still doubt in customs (as the withheld classification and liquidation of this October 26, 1960 entry evidences) as to what course customs should follow in classifying Shell Alexia Oil. The fact that there was not an established and uniform customs practice of classifying Shell Alexia Oil free of duty under paragraph 1733, prior to October 26, 1960, is, in our opin-

ion, sufficient basis to overrule this protest on authority of Biddle Sawyer Corp. v. United States, *supra.*

Plaintiff, however, argues that the letter of February 5, 1965 amounted to a finding that there was an established and uniform customs practice classifying Shell Alexia Oil free of duty under paragraph 1733. When customs finds an "established and uniform practice" we cannot go behind the finding to determine if there are facts to support it. But we can, when put in issue, determine whether customs made a finding of an established and uniform practice. Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust.Ct. 166, C.D. 2624 (1966); R. U. Delapenha & Co., Inc. v. United States, 36 Cust.Ct. 345, Abstract 59725 (1956), or whether in the absence of any finding, there was in fact an established and uniform practice. Biddle Sawyer Corp. v. United States, *supra.* We have already held that there was in fact no established and uniform practice prior to the only date relevant, to wit, the date of importation. We also hold that, on this record, the February 5, 1965 letter did not constitute a finding that Shell Alexia Oil was free of duty under paragraph 1733 pursuant to an established and uniform customs practice.

When customs in fact finds an "established and uniform practice" of classification which it proposes to change, the customs practice has been to make clear what it is finding, what the prior uniform practice incident to the finding was, and the effective date of the change in the uniform practice. The Bureau frequently makes decisions for information and guidance which are not rulings requiring notice under section 315(d). Compare, Borneo Sumatra Trading Co., Inc. v. United States, *supra*, with R. U. Delapenha & Co., Inc. v. United States, *supra.* The February 5, 1965 letter does contain the section 315(d) statutory words "established and uniform practice", but does not indicate or specify what the uniform practice

was. In fact the letter places considerable reliance on a specific court decision and the absence of any "court decision requiring a different result". We do not think one can ignore the Bureau's reference to court decisions and thereby circumscribe the indiscriminate use of the words "established and uniform practice" with automatic substantive rights under section 315(d). Where an alleged finding lacks the niceties that usually go with it, and is otherwise ambiguous, the sense of the finding must be determined from consideration of the subject matter and the whole record made before the administrative body, rather than technical consideration of the words used. Thurston v. Hobby, D. C., 133 F.Supp. 205, 209 (1955).

The parties have here stipulated the facts relevant to the administrative record which preceded the February 5, 1965 letter. Subsequent to the October 26, 1960 entry of this protest and up to June 19, 1961, in disregard of uniformity, some 40 additional entries of Shell Alexia Oil were liquidated or reliquidated at different ports, free of duty under paragraph 1733, and 5 entries were liquidated under paragraph 1558 at the port of Mobile. (The record is silent as to the authority under which those actions were taken.) The latter customs liquidations, between October 26, 1960 and June 19, 1961, in part overlap the date, May 6, 1961, when plaintiff in this case, on notice that defendant did not intend to abide the decision in the first *Asiatic* test case, *supra*, moved the second protest case (protest 60/12406), mentioned above, for trial in this court, again on the claim that Shell Alexia Oil classified by customs as dutiable under paragraph 1558 was properly free of duty under paragraph 1733. Notice of the new test case and instructions to withhold advisory classifications of Shell Alexia Oil pending the outcome of the new test case was given to all customs officers on June 19, 1961. Notwithstanding those instructions, between June 19, 1961 and September 11, 1961, 19 additional entries of Shell Alexia Oil were

liquidated or reliquidated free of duty under paragraph 1733. Those liquidations in part overlap the date, August 11, 1961, the date when, after trial and time for briefs, plaintiff abandoned protest 60/12406, *supra*, without filing a brief. The upshot of plaintiff's abandonment was that the judgment dated September 11, 1961, dismissing abandoned protest 60/12406, *supra*, left the Shell Alexia Oil of that protested entry dutiable as classified by customs under paragraph 1558. The suspended cases in this court involving classification of Shell Alexia Oil were all, sometime thereafter, similarly abandoned and dismissed.

Plaintiff readily admits that the reason it abandoned protest 60/12406, *supra*, and those suspended under it and the earlier *Asiatic* test case, *supra*, was that after "study of the new evidence introduced by the government, * * * [in protest 60/12406, it] concluded that * * * [it] could not successfully prosecute * * * [the] claim" that Shell Alexia Oil was properly free of duty under paragraph 1733. (Exhibit 6 of the stipulation, page 4.)

The above facts sharply etch the continuing controversy and uncertainty that beset the customs classification of Shell Alexia Oil starting in 1959. There was no established and uniform customs practice classifying Shell Alexia Oil under paragraph 1733 during the controversy which terminated in this court on September 11, 1961. We are at a loss to understand how it could be held that the letter, dated February 5, 1965, found a prior established and uniform practice classifying Shell Alexia Oil under paragraph 1733, on a record which shows that customs deliberately held up classifying Shell Alexia Oil entries until the litigation, started in 1959, was resolved. The anomaly in plaintiff's protest is that it would require customs to reclassify the Shell Alexia Oil of this protest entry free of duty under paragraph 1733, pursuant to an established and uniform practice effective when this Shell Alexia Oil was imported on October

26, 1960, although the fact of the matter is that customs held up liquidating this October 26, 1960 entry until March 1965, albeit under paragraph 1733, because it was not certain which classification Shell Alexia Oil should take, paragraph 1558 or paragraph 1733. Customs did not, in our opinion, have to give section 315(d) notice when, in April 1965, it reversed itself and decided that Shell Alexia Oil was properly classifiable under paragraph 1558 rather than paragraph 1733, and reliquidated this protest entry accordingly.

On this record, the protest is overruled.

Judgment will so enter.

RAO, Chief Judge (concurring).

I am in accord that under the circumstances of this case, the 30-day notice provided for in section 315(d) of the Tariff Act of 1930, as amended, was not required.

Lubricating oil similar to that involved herein was assessed with duty by collectors at 10 per centum ad valorem under paragraph 1558 of said tariff act, as modified, as unenumerated manufactured products, prior to the decision rendered by this court in Asiatic Petroleum Corp. et al. v. United States, 183 F. Supp. 275, 43 Cust.Ct. 252, C.D. 2137 (1959), appeal dismissed 47 CCPA 173, (1960). In that case we held that the merchandise was entitled to free entry under paragraph 1733 of said tariff act as a distillate obtained from petroleum.

For a period after said decision became final, some entries were liquidated free of duty and a few were not. At some time prior to May 6, 1961, the office of the Assistant Attorney General advised counsel that it would not agree to submit pending cases on the record in the *Asiatic Petroleum* case. Another case was brought to trial, the record in *Asiatic Petroleum* incorporated, and testimony introduced by the defendant. On August 21, 1961, plaintiff abandoned

that case and it was dismissed by order of this court on September 11, 1961.

Subsequently some 118 other protests were abandoned.

On February 5, 1965, the Acting Commissioner of Customs wrote a letter to the Collector of Customs at the port of New York with reference to unliquidated entries, noting the decision in Asiatic Petroleum Corp. et. al. v. United States, *supra*, and stating:

In view of the existence of an established and uniform practice and no court decision requiring a different result, it is our conclusion that these entries should be liquidated classifying the merchandise as distillates obtained from petroleum, free of duty under paragraph 1733, in accordance with the court's decision.

This letter is being circulated to all customs officers.

On April 2, 1965, the Acting Commissioner sent a teletype to all collectors, which referred to the letter of February 5th and contained the following:

* * * The Bureau has reconsidered the matter and has decided there is a court decision requiring the entries to which that ruling was applicable to be liquidated (or reliquidated) dutiable. Accordingly, the instructions in that letter are hereby rescinded. * * *

The importation involved herein was entered on October 26, 1960 and was liquidated on March 12, 1965 free of duty and reliquidated on April 16, 1965 at 10 per centum ad valorem under paragraph 1558.

Plaintiff claims that the letter of February 5th was a finding by the Bureau that an established and uniform practice existed of classifying such merchandise free of duty; that the subsequent letter was an administrative ruling resulting in a higher rate, and that it could not be effective except as to merchandise entered or withdrawn for consumption 30 days after the date of publication. Defendant contends that section 315(d) is inapplicable on the ground that there was no finding of an established and uniform practice and that no notice was required.

Section 315(d) reads as follows:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of anti-dumping duties.

That section applies to administrative rulings resulting in a higher rate than that previously assessed under an established and uniform practice, not to a change in rate as the result of a judicial decision. Westergaard, Berg-Johnsen Co. (Chas. H. Timm Co., Inc.) v. United States, 17 Cust.Ct. 1, C.D. 1009 (1946).

In the instant case duties had been assessed under paragraph 1558 prior to the decision in the *Asiatic Petroleum* case, which held that the importation there involved was entitled to free entry. Section 16.10(g) of the Customs Regulations provides: "Unless the Bureau otherwise directs, the principle of any decision of the United States Customs Court or the United States Court of Customs and Patent Appeals adverse to the Government shall be applied to unliquidated entries * * *." Thus, the Bureau could have declined to follow the decision in the test case. It did follow it for a time, then it changed its position and a new test case was brought which was abandoned. The decision in that case was not on the merits and set forth no new principle for the Bureau to apply. Some cases were thereafter abandoned by plaintiff, but some unliquidated entries remained, of which this is one.

At the time the letter of February 5th was issued, the Bureau could have again declined to apply the principle of Asiatic

Petroleum Corp. et al. v. United States, *supra*. Instead it chose to follow it. This was not an administrative ruling requiring notice under section 315(d) since it did not change the rate to a higher one, but directed free entry. Later the Bureau decided not to follow the test case and referred to another judicial decision, presumably the dismissal of the protest which had been abandoned. That abandonment withdrew the issue from judicial consideration and the decision rendered did not constitute a reversal of the *Asiatic Petroleum* case, Berkery, Inc., et al. v. United States, 53 Cust.Ct. 196, C.D. 2495 (1964); Sims-Worms, Inc., et al. v. United States, 60 Cust.Ct. 609, C.D. 3473 (1968). Contrary to the Commissioner's statement, it did not require other entries to be liquidated in one way or another.

Plaintiff claims, however, that the letter of February 5th constituted a finding of an established and uniform practice to liquidate free of duty, which could not be changed by administrative ruling without notice. The letter did not state that the Bureau was making a finding. It referred specifically to the test case and assumed the existence of a practice, but did not say that such a practice existed on the date of entry herein (October 26, 1960). The documents attached to the stipulation indicate the contrary. Insofar as this entry is concerned, the only period which is significant in determining whether an established and uniform practice existed is that prior to October 26, 1960. Biddle Sawyer Corp. v. United States, 50 CCPA 85, C.A.D. 826 (1963).

Neither the letter of February 5th nor the instructions of April 2nd were published in the Treasury Decisions. This is an indication that the Bureau was not making a finding and did not intend to bind itself by its statements. Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust.Ct. 166, C.D. 2624 (1966).

The letter of February 5th did not constitute a finding of an established and uniform practice prior to October 26, 1960 and the Bureau did not have to give notice under section 315(d), *supra*, when it reversed itself and decided to classify this merchandise under paragraph 1558.

RICHARDSON, Judge (dissenting).

I dissent from the conclusion as well as from the separate views expressed by the majority in this case. In my opinion, reliquidation of the entry at bar is void because it was done in violation of the provisions of 19 U.S.C.A., section 1315(d).

It serves no useful purpose in this litigation to comment upon the subject of whether in fact there was an established and uniform practice in the classification of Shell Alexia A oil prior to the duty-free liquidation of the subject entry, as that issue has not been presented in the protest. And it would only serve to becloud the issue to discuss the procedural jockeying on the classification issue which both parties have indulged in since the advent of this court's decision in Asiatic Petroleum Corp. et al. v. United States, 183 F.Supp. 275, 43 Cust.Ct. 252, C.D. 2137, (1959)—the decision that set into motion the duty-free status heretofore accorded the merchandise under the entry at bar as well as the merchandise under the entries described in exhibit 2 of the stipulation.

As both of my colleagues recognize the questions before us in the light of section 1315(d) are (1) whether the Secretary of the Treasury made a finding of the existence of "an established and uniform practice" respecting the classification of Shell Alexia A oil prior to liquidation of the subject entry in conformity therewith, and (2) whether the determination which resulted in the reliquidation "dutiable" of the said entry was an *administrative ruling* imposing higher duties. There can be no question but that liquidation of the entry at bar "free of duty" by the collector at the port of New York was predicated upon the directive contained in exhibit 7 of the stipulation. And in my opinion, the directive of the Acting Commission-

er of Customs in exhibit 7 is a finding by the Secretary of the Treasury of the existence of "an established and uniform practice" in the classification of Shell Alexia A oil within the meaning of section 1315(d).

The authority of the Secretary of the Treasury to make the finding contemplated under section 1315(d) is a delegable power. See T.D. 50192 and the statutes and executive order cited therein, and T.D.'s 52121, 53160, and 53654. In determining the existence of "an established and uniform practice" it is the function of the Commissioner of Customs, in the exercise of such delegated power, to weigh the evidence available and declare the result. This he indicates he did in his directive of February 5, 1965 (exhibit 7) when he said "The Customs Bureau has given extensive consideration to the tariff treatment to be accorded unliquidated entries, made before August 31, 1963, which cover merchandise of the type which was the subject of C.D. 2137" *before* making his findings of "the existence of an established and uniform practice" as to the classification of Shell Alexia A oil.

The only evidence submitted to this court for consideration is the stipulation of the parties and the documents the stipulation brought into the record, of which exhibit 7 is one. And there is no conclusion of law by the Commissioner shown on the record to be contrary to the specific facts found by him. We do not even know from the record in this case that the stipulated facts submitted to us are the same as the facts confronting the Commissioner at the time he issued exhibit 7. (It is of interest to note that the stipulation shows that of the various ports of entry around the country reported upon in exhibits 2 and 3 thereof with respect to the treatment of entries of Shell Alexia A oil, only at the port of Mobile was there a continuation of the practice of liquidating entries of this merchandise "dutiable" following the decision of this court in C.D. 2137 and up until a new test case was selected by the Government.) Therefore, on the record in this case the substitution of the court's judgment for that of the Commissioner is unwarranted. And in any event, the question of the correctness of the Secretary's finding is not properly before us for review as Congress has entrusted this matter to the Secretary of the Treasury, and the court should not, therefore, attempt to substitute its judgment on the facts for that of the Secretary. Washington Handle Co. v. United States, 34 CCPA 80, 86, C.A.D. 346 (1946).

The fact that the Commissioner's finding as expressed in exhibit 7 involved a "duty-free" determination rather than a "dutiable" determination does not, in my opinion, operate to remove this case from the application of section 1315(d) *vis-a-vis* the concept of "higher rate of duty" as used in that statute. When the term "higher rate of duty" is used in a comparative sense with respect to different classification provisions, as is the case in section 1315(d), the term embraces classification provisions imposing no duties (free list) as well as those imposing duties (dutiable list). See Jackson v. United States, 2 Ct.Cust. Appls. 70, 75, T.D. 31629 (1911).

Moreover, it is not disturbing to me that the directive contained in exhibit 7 is not couched in the formal language, or the "niceties" as it were, which my colleagues are looking for. I find no requirement in section 1315(d) regarding the form and manner in which the Secretary's finding of "an established and uniform practice" is to be made. The statutory requirement is only that such a finding be made. And I am satisfied that the language employed in exhibit 7 was appropriate for the occasion of the statutory *finding*. In exhibit 7 the Commissioner was responding to the collector at New York on a subject with which both were familiar; and he used the occasion to make all customs officers privy to the information and the directive contained therein. I have no doubt that the customs officials to whom such information was addressed were conversant with the subject matter discussed

in exhibit 7. This is sufficient. There is nothing in section 1315(d) which requires the Secretary to make *his* finding public or even to publish *his* finding. And in the absence of any such requirement there is simply no need that I can see for formalism of language for the benefit of a class of persons, namely, the importing public, who would not be as familiar with the subject matter as would be the customs officials to whom the directive is addressed and who alone are charged with its implementation.

What is required to be made public under section 1315(d) is any subsequent administrative ruling countermanding the finding of the Secretary that operates to the detriment of the importing public. Here is where all the formalism which my colleagues would reserve for the Secretary's finding in order to give it legality is required to be put to work for the benefit of the importing public. And the obvious reason for this is that the rights of the public have intervened between implementation of the Secretary's finding and the countermanding administrative ruling. And in my opinion, the decision of the Commissioner as contained in exhibit 8 which countermanded his earlier ruling is an *administrative ruling* imposing higher duties within the meaning of section 1315(d).

That the 30 days notice provided for in section 1315(d) was designed to subserve and protect the interests of the importing public is clear from a reading of the legislative history of the amendment to section 1315(d) set out in Westergaard, Berg-Johnsen Co. (Chas. H. Timm Co., Inc.) v. United States, 17 Cust.Ct. 1, C.D. 1009 (1946), which is cited by both of my colleagues. *Appropos* to such intent is the statement found on page 3 in *Westergaard* where the court quotes from the hearings on H.R. 6738 (relating to the current text of section 1315(d)) as follows:

> The last sentence of the proposed amendment * * * is a paraphrase of the present customs regulations which grant 30 days notice to importers and others before adverse administrative rulings resulting in a change in a uniform and well-established practice become effective. The fairness of such regulations is evident and the statutory crystallization of the policy contained in the regulations and followed by the Treasury Department for 30 years is considered to be very desirable, particularly since a corresponding reciprocal provision has been incorporated in several of the trade agreements entered into under the authority of section 350 of the Tariff Act of 1930, as amended (U.S.C., 1934 ed., title 19, sec. 1351). *This provision would not, of course, apply in the event of a change in practice made necessary by a judicial decision* or by a proclamation made by the President under any provision of law. Any change made under the antidumping law (U.S.C., 1934 ed., title 19, secs. 160–173) is expressly excepted from the benefit of this period of grace. [Italics added.]

One of the difficulties I find with *Westergaard*, however, is not with the above statement concerning the respite intended to be accorded to importers and others by the amendment to section 1315(d), but with the court's interpretation in that case of the meaning of the italicized portion of the statement dealing with judicial decisions. The court in *Westergaard* interprets the language in italics as excluding from the application of section 1315(d) all countermanding administrative rulings imposing higher duties which are founded upon judicial decisions, and this, notwithstanding the fact *vis-a-vis* the doctrine of *res judicata* in customs cases that the only parties affected by the underlying judicial decision *per se* are the parties involved in the customs transaction or transactions embraced by such decision. However, as I read the words "change in practice made necessary by a judicial decision" as set out in the above statement these words evidence the intention that there be excluded from the application of section 1315(d) only those

countermanding administrative rulings imposing the higher duties which are *mandated* by judicial decisions—the obvious kind of situation affecting parties to whom administrative notice would be superfluous by reason of their involvement with the judicial decision imposing the higher rate. Consequently, consistent with the purpose for which the amendment to section 1315(d) was proposed as above noted, I find that section 1315(d) does not exempt from its application those countermanding administrative rulings imposing higher duties which are based upon judicial decisions that the Secretary or customs officials *elect* to apply and extend to customs transactions not otherwise affected by such decisions and concerning which the importing public is not normally aware of or concerned with or involved in. Such rulings are just as much "administrative rulings" within the meaning of section 1315(d) in my opinion as are administrative rulings founded on a nonjudicial basis. And in either case unless and until the administrative ruling is published in accordance with the requirements of section 1315(d) the importing public is unaware of the existence of the ruling or of its impact upon importations made without reference thereto. Hence the need for public notice which, in my view, section 1315(d) was designed to meet.

Another fault I find with the decision in *Westergaard* is its failure, although addressing itself to the requirements of section 1315(d), to come to grips with the prime ingredient of that statute's application, namely, a finding by the Secretary of the Treasury of the existence of an established and uniform practice with respect to the classification of stockfish. The plaintiff in that case did not contend nor did the court there find that the Secretary had made such a finding. And absent a finding by the Secretary of the existence of an established and uniform practice with respect to the classification of stockfish, the court in *Westergaard* did not properly reach any question as to the nature of a countermanding administrative ruling imposing higher duties. Washington Handle Co. v. United States, *supra*, 34 CCPA at page 87.

Under the stipulated facts of record I conclude, for the reasons stated, that plaintiff's claim herein is well founded, in consequence of which, I would sustain the protest.