J. E. BERNARD & CO., Inc.
v.
UNITED STATES.
R.D. 11739; Reappraisement R65/22938.

United States Customs Court.
March 29, 1971.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel) for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Steven P. Florsheim, New York City, trial attorney), for defendant.

MALETZ, Judge:

This case presents the issue—not previously decided—as to whether the doctrine of collateral estoppel is applicable in reappraisement litigation in this court.

 Collateral estoppel, it is to be noted, is an aspect of res judicata.[1] As explained in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898 (1948): "The general rule of res judicata applies to repetitious suits involving the *same*

*cause of action.* It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' * * * The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. * * *

"But where the second action between the same parties is upon a *different cause or demand*, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' * * * Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were acually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. * * *" [Emphasis added.] See also e. g., Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Forrest Village Apartments,

1. See e. g., Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 90–91, 74 S.Ct. 414, 98 L.Ed. 532 (1954);

Lynch v. Commissioner, 216 F.2d 574, 579 (7th Cir. 1954).

Inc. v. United States, 371 F.2d 500, 502–503, 178 Ct.Cl. 490 (1967).[2]

The present case is an appeal for reappraisement and is in essence (as plaintiff emphasizes in its brief) a reargument of the issues presented to this court in Globe Shipping Co., Inc. v. United States, 63 Cust.Ct. 639, R.D. 11687 (1969), which was decided adversely to the importer. That case involved the dutiable value of six purifiers (grain milling machines) that were exported by a British concern to an American importer in December 1964. The present case involves three additional purifiers that were shipped by the same exporter to the same importer in October 1964. These additional purifiers were part of the same order as the previous six and went to the same customer in the United States. The purchase price paid by the importer for these additional purifiers was likewise the same as for the purifiers involved in the prior case, and the present shipment was part of the same contract with the exporter.[3]

■ In the prior case, the purifiers were appraised by the government at the invoice price without allowance of a 20 percent discount, as claimed by the importer. The importer challenged this appraisement in this court and presented evidence at trial to support its contention that the proper dutiable value for the imported purifiers was the invoice price less the 20 percent discount. The court, however, held, contrary to the importer's contentions, that the government's appraised value represented the proper dutiable value.[4] Globe Shipping Co., Inc. v. United States, *supra*, 63 Cust. Ct. 639. The importer did not appeal that decision. It now seeks to reargue the same issue via the present case—which, of course, constitutes a new cause of action since it involves a different importation.[5] In so doing, the importer has submitted its case on the evidence of record in the former case and has offered no additional evidence on the merits.

The situation, in short, is that the real parties-in-interest in the present case and prior case are the same; the imported merchandise is the same; the record is the same; and the issue is the same. In this factual situation, the question is whether the doctrine of collateral estoppel is applicable to preclude the importer from relitigating the same issue here.

Our starting point is United States v. Stone & Downer Co., 274 U.S. 225, 47 S. Ct. 616, 71 L.Ed. 1013 (1927). There the

---

2. The term "collateral estoppel" was first used by the American Law Institute, Restatement, Judgments § 68, comment *a* (1942). See Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 3 n. 4 (1942). See also Developments—Res Judicata, 65 Harv.L.Rev. 818, 840 n. 157. Collateral estoppel, like res judicata, "is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation * * *." Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). "The doctrine also seeks to protect a litigant from the harassment and expense of having to repeat his opposition to the same adversary on an isssue already canvassed. * * * There is, too, society's need to put an end to controversies which have erupted between two persons. * * * Collateral estoppel * * * also

* * * saves the time of the courts by forestalling needless relitigation." Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 976–977, 178 Ct.Cl. 543 (1967).

3. Entry in the former case was made by Globe Shipping Co., Inc. as customs broker at the port of New York. Entry in the present case was made by J. E. Bernard & Co., Inc. as customs broker at the port of Chicago.

4. Another prior case involving a similar issue and the same parties-in-interest was likewise decided adversely to the importer. Donald Schmidt, et al. v. United States, 58 Cust.Ct. 584, R.D. 11259 (1967).

5. "Each case in this court represents an importation of the goods involved separate and distinct from all other importations of the same or similar goods." Charles H. Demarest, Inc. v. United States, 42 Cust.Ct. 180, 185, C.D. 2084 (1959).

Supreme Court held that a prior judgment determining the classification of goods and the duty upon their importation was not "res judicata" upon another importation of the same kind of goods by the same importer.[6] The holding was based on two considerations. The first was in deference to a rule established by the Court of Customs Appeals—when its jurisdiction over customs cases was exclusive and final—that the classification of an import for customs purposes was not conclusive in a subsequent suit between the same parties.[7] Second, the Court was persuaded as to the wisdom of the rule in customs classification cases —as distinguished from tax and other cases—and pointed out the discrimination, injustice and confusion which would flow from a contrary rule. Thus, it said (274 U.S. 235–236, 47 S.Ct. 618– 619):

> * * * The effect of adjudicated controversies arising over classification of importations may well be distinguished from the irrevocable effect of ordinary tax litigation tried in the regular courts.[8] There of course should be an end of litigation as well in customs matters as in other tax cases, but circumstances justify limiting the finality of the conclusion in customs controversies to the identical importation. The business of importing is carried on by large houses between whom and the government there are innumerable transactions, as here, for instance, in the enormous importations of wool, and there are constant differences as to proper classifications of similar importations. The evidence which may be presented in one case may be much varied in the next. The importance of a classification and its far-reaching effect may not have been fully understood or clearly known when the first litigation was carried through. One large importing house may secure a judgment in its favor from the Customs Court on a question of fact as to the merchandise of a particular importation, or a question of construction in the classifying statute. If that house can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another importing house may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. The importing house which has by the principle of the thing adjudged obtained a favorable decision permanently binding on the government will be able to import the goods at a much better rate than that enjoyed by other importing houses, its competitors. Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion. In the same way, if the first decision were against a large importing house, and its competitors instituted subsequent litigation on the same issues with new evidence or without it, and succeeded in securing a different conclusion, the first litigant, bound by the judgment against it in favor of the government must permanently do business in importations of the same merchandise at great and inequitable disadvantage with its competitors.

---

6. As previously indicated, this use of the term "res judicata" has more recently been referred to as "collateral estoppel."

7. See e. g., United States v. Jackson, 1 Ct. Cust.Appls. 25, T.D. 30849 (1910); Wanamaker v. United States, 6 Ct.Cust.Appls. 21, 24, T.D. 35271 (1915); Wells, Fargo & Co. v. United States, 7 Ct.Cust.Appls. 346, 352, T.D. 36903 (1916); Beuttell & Sons v. United States, 8 Ct.Cust.Appls. 409, 410, T.D. 37666 (1918).

8. In tax cases and other subjects of litigation, the Court noted that it was settled that "the general rule by which a judgment estops the parties, in future litigation between them, to question either a fact or a point of law necessary to the first judgment and adjudicated therein" was applicable. 274 U.S. at 230, 47 S.Ct. at 617. See also e. g., Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933).

After *Stone & Downer*, the next major development relevant to our present inquiry occurred in 1948 when the Supreme Court in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, recast its position on the doctrine of collateral estoppel—at least in tax litigation. The Court first noted that collateral estoppel must be applied in such a way so as to avoid undue disparity and discriminating distinctions in income tax liability. Thus, the Court decreed that the doctrine was to be limited to matters which once having been decided have remained substantially static, factually and legally. As the Court put it (p. 599, 68 S.Ct. p. 720):

> * * * [C]ollateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereaftter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liabilty, and a fertile basis for litigious confusion. Compare United States v. Stone & Downer Co., 274 U.S. 225, 235, 236, 47 S.Ct. 616, 71 L.Ed. 1013. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

More specifically, the Court in *Sunnen* laid down the following principles: (1) Where two cases involve income taxes in different tax years, collateral estoppel must be confined to situations were the matter raised in the second suit is identical in all respects with that decided in the first and where the controlling facts and applicable legal rules remain unchanged; (2) collateral estoppel is inapplicable in litigation regarding income taxes for different years where decisions of the Court intervening between the earlier and later litigation have changed the applicable legal principles; (3) if the relevant facts in the two cases are separable, even though they are similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. See also e. g., United States v. Simon, 281 F.2d 520, 523–524, and cases cited (6th Cir. 1960); Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 977, 178 Ct.Cl. 543 (1967); Griswold, Res Judicata in Federal Tax Cases, 46 Yale L.J. 1320 (1937).

■■ *Sunnen*, it is to be added, did not expressly overrule *Stone & Downer*. In that circumstance, the customs courts have continued after *Sunnen*—as they had before—to adhere consistently to the *Stone & Downer* rule that a judgment in a customs classification case does not estop a subsequent action between the same parties involving the same merchandise and issues.[9] See e. g., United

---

9. Of course, stare decisis—which is grounded in the public policy of putting an end to litigation and of not reopening questions which have been decided, unless clear error is shown—is applicable in customs litigation. See e. g., United State v. Dodge & Olcott, Inc., 47 CCPA 100, 103, C.A.D. 737 (1960); United States v. Mercantile Distribuidora, S.A., et al., 45 CCPA 20, 23–24, C.A.D. 667 (1957). In contrast to stare decisis, the doctrines of res judicata and collateral estoppel bar further litigation even if the first judgment is erroneous. This is to say that unlike stare decisis, "a *fact, question* or *right* distinctly adjudged in the original

States v. Vincent De Messimy, 16 Ct. Cust.Appls. 150, 152, T.D. 42781 (1928); Robinson-Goodman Co. (Inc.) v. United States, 16 Ct.Cust.Appls. 243, 247, T.D. 42842 (1928); Burstein & Sussman v. United States, 16 Ct.Cust.Appls. 282, 285 (1928); Lamont, Corliss & Co. v. United States, 18 CCPA 431, 434, T.D. 44682 (1931); United States v. Boone, 188 F. 2d 808, 38 CCPA 89, 93–94, C.A.D. 445 (1951); [10] Charles H. Demarest, Inc. v. United States, 42 Cust.Ct. 180, 185–86, C.D. 2084 (1959); Coles Cranes, Inc. v. United States, 50 Cust.Ct. 221, 224, Abstract 67483 (1963); Great Lakes Paper Company et al. v. United States, 52 Cust.Ct. 64, 68, C.D. 2438 (1964); Asi-

atic Petroleum Corp. v. United States, 64 Cust.Ct. 47, 51, C.D. 3958, 309 F.Supp. 1006, 1009 (1970) (appeal pending).[11]

What is particularly significant from what has been said is that *Stone & Downer* and the customs decisions that have followed in its path have all involved *classification* questions and not valuation questions. Indeed, no case brought to our attention by the parties—or discovered by independent research—has ruled squarley on the question as to whether or not collateral estoppel is applicable in customs reappraisement litigation. See Hub Floral Manufacturing Co. v. United States, 64 Cust.Ct. 669, R.D. 11699 (1970).[12] Thus, the problem essentially

---

action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 103 n. 9, 74 S.Ct. 414, 422, 98 L.Ed. 532 (1954). See also e. g., United States v. Western Union Telegraph Co., 52 F.Supp. 553, 554 and cases cited (S.D.N.Y.1943); 1B Moore's Federal Practice (2d ed.), sec. 0.405 [4.—1], pp. 635–36.

10. In *Boone,* a judge dissented on the basis that *Stone & Downer* had been modified by *Sunnen* and that the *Sunnen* principles were applicable to administration of the tariff laws. 38 CCPA at 99–101.

11. The customs cases have also held that where the second suit is upon the same cause of action as a prior suit, res judicata (as the term is presently used) is applicable. Thus, in United States v. Vincent De Messimy, 16 Ct.Cust.Appls. 150, T.D. 42781 (1928), a petition for remission of additional duties was denied by that court upon its merits by a judgment. Thereafter, the court held that a second petition asking for remission of the same additional duties was barred by res judicata. Similarly, in United States v. Edward M. Poons Co. of Kobe, Inc., 18 CCPA 283, T.D. 44451 (1930), the court held that where a protest was made against a liquidation, which protest was sufficiently broad to cover all items upon an invoice, and the case proceeded to judgment, followed by a reliquidation which complied with the judgment, the issue in that case became res judicata and was not again open to protest. To like effect is Fischer v. United States, 38 CCPA 143, C.A.D. 452 (1951), where

it was held that a plea of prior judgment in a court proceeding between the same parties, raising the same issue for the same purpose, regarding the same subject matter, was a bar to further litigation. This, the court added, "is true not only as to every matter offered or received in the prior case, but as to any other admissible matter pertaining to the *issue* therein raised which, with reasonable diligence, *might have been* presented therein." Id. at 148. [Emphasis in original.] See also Berkery, Inc., et al. v. United States, 53 Cust.Ct. 196, 198, C.D. 2495 (1964). These holdings would seem consistent with the observation in *Stone & Downer* that the finality of the conclusion in customs controversies should be limited to "the identical importation." 274 U.S. at 235, 47 S.Ct. 616.

12. In S. Handal & Sons, Inc., et al. v. United States, 38 Cust.Ct. 620, R.D. 8775 (1957)—a reappraisement case—there was a suggestion by way of dictum that res judicata (i. e., collateral estoppel) was not applicable. The case arose on a motion for an order to set aside dismissals of certain appeals for reappraisement that had previously been voluntarily abandoned. The court granted the motion on the ground that the abandonment resulted from an honest error of judgment and that interests of justice would best be served by allowing plaintiffs their day in court. The court also made this observation: "Moreover, the singular practice which obtains in this court permits of a trial *ab initio* for each entry of imported merchandise, and the principle of res adjudicata has never applied in customs jurisprudence." 38 Cust.Ct. at 621. Considering the context in which

is whether the *Stone & Downer* rule—that a judgment in a customs classification case does not estop a subsequent action between the same parties involving the same merchandise and issues—should be extended to reappraisement cases, or whether in such cases the doctrine of collateral estoppel, in accordance with the limitations laid down by *Sunnen*, should be applicable. For the reasons that follow, it is concluded that *Stone & Downer* should not thus be extended, but rather that the *Sunnen* rule of collateral estoppel should apply.

In the first place, there is a considerable difference between classfication and reappraisement (i. e., valuation) litigation. Classfication—involving as it does the tariff status of imported commodities—is unique in the character of the questions presented. See Tait v. Western Md. Ry. Co., 289 U.S. 620, 625, 53 S.Ct. 706, 77 L.Ed. 1405 (1933). Valuation litigation, on the other hand, is of a different character. For basically the valuation of merchandise in customs litigation is determined by commercial transactions in the market place. In this respect, the decisions this court is called upon to make in such cases are no different conceptually than the decisions courts are called upon to make in tax cases and other fields of litigation. For example, litigated in this court in determining dutiable value are such questions as whether merchandise was freely sold or offered for sale at the claimed prices; whether the importer was an agent of the exporter or an independent contractor; whether a particular arrangement constituted a buying commissionaire relationship; whether a buying commission was a bona fide one; whether a price invoiced by an exporter to selected purchasers in the United States fairly reflected market value; etc.; etc. These and the manifold other kinds of problems presented to this court in valuation cases are not endemic to customs litigation; to the contrary, they bear striking kinship to the problems frequently encountered in tax and other types of cases.

■ Second, considering that valuation cases in this court are scarcely unique, no reason is apparent as to why there should not be an end of litigation in such cases is in tax cases (see United States v. Stone & Downer Co., 274 U.S. at 235, 47 S.Ct. 616)—if in the process inequalities and discriminating consequences can be avoided. And it was precisely to avoid these consequences that the *Sunnen* principles were formulated. Thus, under *Sunnen* repetitious lawsuits would be precluded by collateral estoppel only where the matters which had been decided in the first case had remained substantially static, factually and legally. Hence, applying the *Sunnen* principles, if an importer was unsuccessful in obtaining a favorable valuation determination in this court and later another importer of the same merchandise obtained a favorable determination resulting in his paying a lower duty than the first importer, collateral estoppel would not prevent the first litigant from instituting a new cause of action. For "where the situation is vitally altered between the time of the first judgment and the second" or where there is an "intervening doctrinal change," the prior determination would not be conclusive. See *Sunnen*, 333 U.S. at 600–601, 68 S.Ct. at 720, 92 L.Ed. 898. Conversely, if the first importer obtained a favorable valuation determination and later a second importer of the same merchandise obtained an unfavorable determination resulting in his paying a higher rate of duty than the first, the decision in favor of the first importer would not be permanently binding on the government because of the intervening changes.

■ Holding, as the court does, that collateral estoppel is applicable in reappraisement litigation, we turn now to the present case which is identical in every material respect to the prior case—Globe Shipping Co., Inc. v. United States, *supra*. As set out previously, ex-

this statement was made, it hardly can be regarded as a square holding that col-

lateral estoppel is inapplicable in reappraisement litigation.

cept for the name of the nominal plaintiffs, the parties are the same; the cases involve identical merchandise, the same purchase price, the same exporter and importer, and arise out of the same contract of sale. The only distinction between the two cases is that different importations are involved and, therefore, two causes of action. The point, though, is that the matters decided in the first case have remained static, factually and legally. Thus, the issue raised in the present suit is identical in all respects with that decided in the first action; the facts and the applicable legal rules are identical; the legal matter raised in the present action arises out of the same transaction and the same bundle of legal principles that contributed to the rendering of the first judgment; and there have been no intervening changes in the legal climate which would require a different result from that reached in the prior case. It is true that plaintiff asserts that the court committed error in deciding the earlier case. But as indicated before, collateral estoppel precludes further litigation even if the first judgment is erroneous. See note 9, *supra*. In short, given the circumstances here, collateral estoppel requires that the prior judgment be conclusive. The appeal for reappraisement is therefore dismissed, and judgment will be entered to that effect.